**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

United States of America,

           Plaintiff,

v.

Jared Isiah Varela,

           Defendant.

No. CR-21-00955-TUC-JCH (EJM)

**REPORT AND RECOMMENDATION**

Pending before the Court are two motions filed by Defendant Jared Isiah Varela ("Varela"). The defendant's Motion to Preclude and Response to Government's 404(b) Notice (Doc. 41) requests that the Court preclude evidence of three prior domestic violence cases, an altercation at the victim's apartment ("the apartment incident"), and a sexual encounter between the defendant and the victim. The Court finds that the apartment incident and sexual encounter are inextricably intertwined with the charged offenses and thus not subject to Fed. R. Evid. 404(b)'s requirements. The Court further finds that the three prior domestic violence cases are admissible for a proper purpose under Rule 404(b) as relevant to the issues of motive, intent, and absence of mistake or accident. Finally, the Court finds that the probative value of the apartment incident, sexual encounter, and prior domestic violence cases is not substantially outweighed by a possible danger of unfair prejudice, confusing the issues, or misleading the jury.

The defendant's Motion to Preclude Government's Expert Witnesses (Doc. 40) requests that the Court preclude testimony by the government's "blind" domestic

violence expert and a nurse who treated the victim. The Court finds that the government's proposed domestic violence testimony is the proper subject of expert testimony pursuant to Fed. R. Evid. 702 but that the relevance and reliability of the expert's proposed testimony for this particular case are best assessed by the trial judge. The Court further finds that the treating nurse may testify as a fact witness to matters occurring within the course and scope of her treatment of the victim, and that the probative value of her testimony is not substantially outweighed by concerns of unfair prejudice, confusion of the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence.

Accordingly, for the reasons set forth below, the Court finds that the defendant's Motions should be denied.

## PROCEDURAL BACKGROUND

On May 5, 2021 a federal grand jury sitting in Tucson, Arizona returned an Indictment against Varela charging him with three felony offenses relating to domestic violence. (Doc. 3). Count One charges Varela with intentionally knowingly and recklessly assaulting an intimate partner and dating partner resulting in substantial bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(7). Count Two charges Varela with intentionally and knowingly assaulting an intimate partner and dating partner by strangling and attempting to strangle her, in violation of 18 U.S.C. §§ 1153 and 113(a)(8). Count Three charged Varela with domestic assault by a habitual offender, in violation of 18 U.S.C. § 117, but was later dismissed by the District Court. *See* Docs. 49 and 50.

On March 4, 2022 the defendant filed the two motions at issue here.

On May 5, 2022 the Court held oral arguments on the defendant's motions.

## DISCUSSION

**I.    Motion to Preclude Government's 404(b) Evidence**

A. Factual Background

The government filed a Notice of Direct, Inextricably Intertwined, and Rule

- 2 -

404(b) Evidence stating that it intends to introduce evidence at trial of other acts between the defendant and the victim: the apartment incident occurring several days before the charged conduct, a sexual encounter occurring just prior to the charged conduct, and the defendant's prior domestic violence cases in Pima County Superior Court.

### i.  Apartment Incident

As described by the government in its Notice, approximately 3–4 days before the charged assaults the defendant and victim had contact outside of her apartment. The victim asked the defendant if they could just be friends, and he said "no." The defendant told the victim that she did not love him or care about him and that she wanted to be with someone else. His accusations made her feel bad and like things were her fault. The defendant pinned the victim against the wall and was holding her arms and preventing her from leaving. He did not release her until she told him that she would stay with him. The victim told law enforcement that she does not actually want to be with the defendant and that he scares her, that she has been trying to leave the defendant but that he is manipulative, and that she feels like she has no choice in the relationship.

### ii.  Sexual Encounter

The government's Notice alleges that the following events transpired in the 24 hours prior to the charged conduct: The victim was at a party on the evening of February 13, 2021 and drank three Mike's Hard Lemonades and started to feel dizzy and tired and was afraid someone had drugged her. She called the first person in her phone to come pick her up—the defendant—and asked him to take her home. The victim passed out in the backseat and when she woke up, she realized the defendant had taken her to his mother's house. The defendant placed her on the bed and she fell asleep/passed out again. The victim woke up again with the defendant on top of her, having sex with her. After the sex was over, she got up, put her clothes on, and left. The defendant followed her out of the house and the charged assaults occurred. The victim later contacted law enforcement and stated she had lied about being asleep when the sex occurred. She said she was awake for some portions but was going in and out of consciousness. The defendant did

not ask her if she wanted to have sex with him and she did not want to, but she felt like it was her fault because she did not say "no" or physically try to stop him. When asked why she did not try to stop him, the victim said that she was afraid something would happen if she told him "no" and that she just wanted him to finish so that she could leave. The victim stated that her sexual relationship with the defendant was forced and that he used their son against her to continue their relationship.

### iii.  Prior Cases

As described by the government in its Notice of Direct, Inextricably Intertwined, and Rule 404(b) Evidence, the defendant was previously charged in three domestic violence cases involving the same victim in Pima County Superior Court. The following summaries are derived from the government's Notice and the exhibits submitted at oral argument of the indictments and TPD case summary reports.

In CR 20161989-001, TPD responded to the victim's apartment on March 28, 2016 after receiving a 911 call. The victim stated that she had broken up with the defendant in November 2014 and that he had been harassing her since January 2016. On March 27, 2016 she took the trash out and saw the defendant following her back to her apartment. He grabbed her by the hair and pulled her inside and threatened to harm her if she tried to leave. When she did attempt to leave, the defendant took her to the floor and held her down by her wrists and started screaming that they were going to be together or he would destroy any guy she was with. The defendant punched her in the face multiple times and strangled her until she lost consciousness for approximately 30 seconds. The defendant then sat on top of her for approximately 2 hours, telling her that he wanted to get back together. When he got up to use drugs, the victim tried to leave again, and he again pulled her back inside by her hair. When the victim's parents showed up to take her to an appointment, they confronted the defendant and called the police. The victim had a black eye that was swollen shut and injuries to her collar bone, and the defendant took money and her cell phone. The defendant was indicted on eight charges and subsequently pled guilty to one count of attempted aggravated assault with a deadly weapon/dangerous

instrument and one count of domestic violence aggravated assault. He was sentenced to one year imprisonment followed by four years' probation.

In CR 20161990-001, the victim called TPD to report that the defendant showed up at her apartment on April 13, 2016. As she was leaving her apartment, the defendant came up behind her, grabbed her by the shoulders, and pushed her back inside. He started yelling at her and she went in the bedroom and tried to close the door to get away from him, and he hit and kicked the door. The defendant got into the bedroom and pushed the victim into the closet door. He held her in the apartment against her will for about an hour. The victim reported that the defendant showed up again on April 19, 2016 as she was leaving her apartment. He pushed the door open before she could lock it and threw her keys on the ground. The defendant took some of her DVDs, beanies, and a cell phone. She tried to serve him with an order of protection she had obtained, but he ignored her. The defendant was indicted on one count of domestic violence kidnapping and one count of second-degree burglary. The case was later dismissed as part of the plea agreement the defendant entered in CR 20161989-001 and CR 20161991-001.

In CR 20161991-001, TPD responded to the victim's apartment on April 28, 2016 after receiving a 911 call. She was holding the right side of her face and had difficulty closing her mouth and thought something was wrong with her jaw. The victim reported that the night before, the defendant followed her to her apartment and argued with her and told her she would not get another boyfriend. The defendant took her cell phone and broke it. Eventually the victim was able to get him to leave. The next morning, she was leaving for work and the defendant was outside of her apartment waiting for her. He pushed her inside, yelled at her, and punched her in the face and chest, and she briefly passed out. She tried to run away but the defendant slammed the door shut on her arm. The victim struggled and was able to break free and asked a man outside to use his phone to call 911. The defendant fled, taking her apartment keys and paperwork related to her new job and their son. The defendant was indicted on three charges and pled guilty to one count of domestic violence kidnapping and was sentenced to 5 years imprisonment.

1     B.  Parties' Arguments

2          The defendant argues that the Court should preclude the government's proffered

3     evidence because the government fails to clearly explain why the prior incidents are

4     inextricably intertwined with the present case. Specifically, the defendant contends that

5     the apartment incident that allegedly occurred several days before the instant offense

6     cannot be considered a single criminal transaction with the charged offense because the

7     incidents are too remote in time, the incidents occurred at different geographical

8     locations, and the surrounding circumstances are different. As to the sexual assault that

9     allegedly occurred just before the instant offense, it is not the basis for the charges in this

10    case, nor has the government alleged that the sexual encounter gave rise to the charged

11    assault, and there were intervening events that occurred after the sexual encounter and

12    before the charged conduct. Therefore, evidence of the sexual encounter is unnecessary to

13    tell a complete story.

14         The defendant further argues that the government fails to explain how the

15    apartment incident or sexual encounter go towards proving identity, opportunity, motive,

16    knowledge, intent, and lack of mistake or accident pursuant to Rule 404(b). Thus,

17    because the government fails to specify which 404(b) exception applies and why, it

18    appears that the evidence is being offered to show that the defendant acted in conformity

19    with his character—a prohibited purpose under Rule 404(a). The defendant contends that

20    even if the government had analyzed the evidence under Rules 403 and 404(b), the

21    evidence fails to prove a material point and will only confuse and mislead the jury. Even

22    if the evidence bears some relevance to the charged conduct, the evidence is still more

23    prejudicial than probative and should be precluded.

24         The defendant also argues that his prior convictions are not being offered for a

25    proper 404(b) purpose; rather, it is impermissible propensity evidence. The defendant

26    contends that the government provides no precise legal justification to admit the evidence

27    and that the factual differences between the charged offense and his prior convictions are

28    such that the priors do not pass the relevancy threshold under Rule 401. Finally, the

defendant contends that introducing his prior dismissed state case will confuse the jury and is prejudicial.

The government contends that the apartment incident and the sexual encounter are inextricably intertwined with the charged conduct because the proffered evidence is necessary for the government to tell a coherent and comprehensible story about the offenses charged in the indictment—the evidence explains the relationship and the dynamic between the defendant and the victim and provides a complete story of why the charged offenses happened. The government further contends that it must prove that the victim and defendant were in an intimate relationship and that the sexual encounter is direct and substantive evidence that is relevant and proof of an element of the charged offenses.

The government further argues that even if the Court finds that the apartment incident or sexual encounter are not inextricably intertwined with the charged offenses or not direct evidence required to prove an element of the offenses, the evidence is still admissible under Rule 404(b), as is the evidence of the defendant's prior convictions. The government contends that the Court has "wide discretion" in determining whether to admit evidence pursuant to Rule 404(b) and that courts have routinely admitted evidence of prior acts of domestic violence in prosecutions for domestic assault against the same victim because a history of prior abuse demonstrates a pattern of behavior that is probative of the defendant's intent and the victim's fear. The government argues that evidence of the defendant's other acts and prior cases is admissible here to prove identity, motive, intent, and absence of mistake or accident.[1] Further, the evidence is not unfairly prejudicial under Rule 403, and any danger of unfair prejudice can be cured with a limiting instruction.

. . .

---

[1] The government previously argued that the defendant's prior domestic violence convictions were necessary to prove Count Three of the indictment, which charged the defendant with domestic assault by a habitual offender. As Count Three has since been dismissed, this argument is moot. At oral argument, the government clarified that it is no longer contending that the prior convictions are inextricably intertwined; it is only arguing that they are relevant under Rule 404(b).

C. Legal Standard

All relevant evidence is admissible unless otherwise prescribed by the United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules prescribed by the Supreme Court. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. While "[t]he Rule's basic standard of relevance thus is a liberal one[,]" *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 587 (1993), "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

Rule 403 "requires that the probative value of the evidence be compared to the articulated reasons for exclusion and permits exclusion only if one or more of those reasons 'substantially outweigh' the probative value." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000). Thus, Rule 403 "favors admissibility, while concomitantly providing the means of keeping distracting evidence out of the trial." *Id.*

i. Rule 404(b)

"Rule 404(b) of the Federal Rules of Evidence precludes the admission of evidence of 'other crimes . . . to prove the character of a person in order to show action in conformity therewith.'" *United States v. Montgomery*, 150 F.3d 983, 1000 (9th Cir. 1998) (quoting Fed. R. Evid. 404(b)). "Evidence of other crimes, however, is admissible to prove 'motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.'" *Id.* "To be probative of something other than criminal propensity, the prior bad act evidence must: (1) prove a material element of the crime currently charged; (2) show similarity between the past and charged conduct; (3) be based on sufficient evidence; and (4) not be too remote in time." *United States v. Johnson*, 132 F.3d 1279, 1282 (9th Cir. 1997). "Other act evidence which meets these four criteria may be admitted and the district court need not make a preliminary finding that the

- 8 -

Government has proved the act by a preponderance of the evidence." *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1013 n.4 (9th Cir. 1995) (internal quotations and citation omitted).

"In addition to satisfying the four-part test, evidence of other crimes must also satisfy the Rule 403 balancing test—its probative value must not be substantially outweighed by the danger of unfair prejudice." *Montgomery*, 150 F.3d at 1000–01. It is the government's burden to show that the proffered evidence satisfies these requirements. *Id.* at 1001.

ii.   Inextricably Intertwined

Courts may allow "other act" evidence as "inextricably intertwined" with the charged crime and thus not subject to Rule 404(b) when the evidence is part of the transaction that serves as the basis for the criminal charge, or when the evidence is necessary for the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime. *United States v. Dorsey*, 677 F.3d 944, 951 (9th Cir. 2012); *see also Vizcarra-Martinez*, 66 F.3d at 1012–13; *United States v. Senffner*, 280 F.3d 755, 764 (7th Cir. 2002) ("Acts satisfy the inextricably intertwined doctrine if they complete the story of the crime on trial; their absence would create a chronological or conceptual void in the story of the crime; or they are so blended or connected that they incidentally involve, explain the circumstances surrounding, or tend to prove any element of, the charged crime."). For other act evidence to qualify as inextricably intertwined, coincidence in time with the charged offense is insufficient—"[t]here must be a sufficient contextual or substantive connection between the proffered evidence and the alleged crime to justify exempting the evidence from the strictures of Rule 404(b)." *Vizcarra-Martinez*, 66 F.3d at 1013. Further, inextricably intertwined evidence may still be excluded under Rule 403 if the probative value of the testimony is outweighed by a danger of unfair prejudice. *See Dorsey*, 677 F.3d at 952.

. . .

. . .

### D. Analysis

#### i. Apartment Incident

The Court finds that the apartment incident occurring several days before the charged conduct is inextricably intertwined with the charged offenses and thus not subject to Rule 404(b)'s requirements.

The defendant argues that the government does not need the apartment incident to tell a coherent story because the story does not start at the victim's apartment. The Court disagrees. While the apartment incident occurred 3–4 days prior to the charged conduct, it explains the background of the victim and defendant's relationship and their history of domestic violence. When the defendant came to the victim's apartment, he refused to accept that she just wanted to be friends and reacted by pinning her against the wall and refusing to release her until she gave in and agreed to still be in a relationship with him. Several days later, the defendant physically assaulted the victim as she left his mother's house, resulting in the charged conduct and illustrating a pattern of behavior where the defendant becomes angry when the victim tries to leave him or says she doesn't want to be with him. As discussed further below, omission of this incident from the narrative obscures the true nature of the relationship between the parties and prevents the government from providing a coherent and comprehensible story regarding the commission of the charged assaults. *See Vizcarra-Martinez*, 66 F.3d at 1013 ("it is obviously necessary in certain cases for the government to explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime"); *see also United States v. Williams*, 291 F.3d 1180, 1189 (9th Cir. 2002) (finding testimony on defendant's prior assaults of victims was inextricably intertwined where the "beatings were an integral part of the transactions that constituted the crimes charged" and "allowed the government to present a coherent and comprehensible story about what took place"), *overruled on other grounds by United States v. Gonzales*, 506 F.3d 940 (9th Cir. 2007); *Dorsey*, 677 F.3d at 952 (witness testimony on seeing defendant with a gun that was the same or similar type used in

shooting was inextricably intertwined; testimony added to the circumstantial case against defendant "and thus formed part of the prosecution's coherent and comprehensible story regarding the commission of the crime" (internal quotations and citation omitted)).

The Court further finds that the probative value of this evidence is not substantially outweighed by a possible danger of unfair prejudice, confusing the issues, or misleading the jury. Fed. R. Evid. 403. In contrast to the defendant's contention, the Court finds that, rather than confusing the issues at trial, discussion of the circumstances surrounding the charged offenses will provide the jury with important context about what happened and why.

ii.  Sexual Encounter

The Court also finds that the sexual encounter is inextricably intertwined with the charged conduct because it is necessary to tell a coherent story about what lead to the physical assaults charged in this case: After the sexual encounter, the victim got dressed and left the defendant's mother's house. The defendant then followed her as she walked to the bus stop, punched her, took her cell phone, and strangled or attempted to strangle her. At oral argument, the government stated that the victim specifically told a nurse at UMC that the sexual encounter led to the physical assault. While the consistency of the victim's story and credibility are issues for the jury to determine, that does not diminish the relevance of the sexual encounter as explaining the circumstances surrounding the charged conduct. Further, it is illustrative of the relationship dynamic between the victim and the defendant. Thus, as with the apartment incident, the sexual encounter is inextricably intertwined with the charged conduct because both prior incidents show the ongoing pattern of domestic violence between the defendant and the victim, and the way that the defendant acts and the victim reacts in this cycle of abuse. Part of that pattern is the victim either not reporting an incident or giving conflicting statements about what happened. Though the Court is sympathetic to the defendant's argument that the apartment incident and sexual encounter will be unduly prejudicial, the prejudicial effect hinges on the victim's credibility, which the defendant will be able to undercut at trial by

challenging her inconsistent statements. *See* Fed. R. Evid. 403.[2]

If the Court did not permit evidence of the apartment incident and sexual encounter to be introduced, the story would start with the victim leaving the defendant's mother's house to walk to the bus stop and then being assaulted. This is not an accurate reflection of reality in terms of what happened in this relationship or this particular incident. "A jury is entitled to know the circumstances and background of a criminal charge. It cannot be expected to make its decision in a void—without knowledge of the time, place, and circumstances of the acts which form the basis of the charge." *United States v. Daly*, 974 F.2d 1215, 1217 (9th Cir. 1992) (citation omitted). Thus, in contrast to the defendant's argument that introduction of these prior incidents will needlessly confuse the jury, the Court finds that omission of the prior incidents would lead to confusion as to why the charged assaults happened in the first place. *See* Fed. R. Evid. 403. As the Court stated at the motion hearing, there is a story to be told here, and the story is relevant. Fed. R. Evid. 401; *see also Hankey*, 203 F.3d at 1172 ("Unless trials are to be conducted as scenarios, or unreal facts tailored and sanitized for the occasion, the application of Rule 403 must be cautious and sparing." (citation omitted)).

### iii.  Prior Domestic Violence Cases

For the reasons explained below, the Court finds that the defendant's prior domestic violence cases are relevant under Rule 404(b) to the issues of motive, intent, and absence of mistake or accident, and that the probative value of the evidence is not outweighed by the danger of unfair prejudice.

The Court must consider four factors to determine whether evidence of other crimes is probative of something other than criminal propensity. The first factor is that the evidence must prove a material element of the crime charged. Here, the Court finds that the prior cases are relevant to show motive, intent, and absence of mistake or accident. First, the prior cases are relevant to motive by illustrating the history of

---

[2] At oral argument, the government clarified that it does not intend to attempt to prove that a sexual assault occurred. Rather, the government's focus is on bringing in the facts of what happened, not characterizing the incident as a sexual assault.

domestic violence between the parties and that when the victim tries to tell the defendant that she doesn't want to be with him, he attacks her. While the defendant argues that motive in the prior cases was to steal items from the victim to support his drug habit, it is clear that each of these incidents were driven by the defendant's anger over the victim not wanting to be with him.[3] For the same reasons, the prior cases are also probative of the defendant's intent. "Provided that the other three requirements for admissibility under Rule 404(b) are met, evidence of a prior incident involving the same victim has probative value in disproving claims that the defendant lacked intent." *United States v. Hinton*, 31 F.3d 817, 822 (9th Cir. 1994) (internal quotations and citation omitted) (evidence of defendant's prior assaults on his wife was admissible as relevant to element of intent in prosecution for assault with intent to murder where "the charged and prior conduct were part of a pattern of abuse involving the same victim and . . . similar *modus operandi*"); *see also United States v. Curley*, 639 F.3d 50, 59 (2d Cir. 2011) ("Where the charged conduct involves domestic abuse, a spouse's history of domestic violence is relevant to show intent to harass or intimidate his partner. . . . The earlier acts demonstrated a pattern of activity that was probative of Curley's intent and Linda's reasonable fear."). Further, as in the present case, CR 20161989-001 also involved the defendant punching and strangling the victim. Finally, the prior cases are relevant to proving absence of a mistake or accident. In the present case, the victim stated that she pinched the defendant's stomach and genitals in an effort to get him to release her arm and get her phone back, and that at some point during their struggle, she fell to the ground. Thus, the prior acts are relevant to the history of abuse to prove that the victim was not injured by mistake or accident, and to refute any allegation that the charged assaults occurred because the defendant was acting in self-defense.

The second factor requires that the prior acts must show similarity between the

---

[3] While the defendant may or may not have been driven in part by a motive to steal from the victim, in CR 20161989-001 the defendant assaulted the victim by punching her in the face multiple times and strangling her until she lost consciousness for approximately 30 seconds, and in CR 20161991-001 the defendant punched the victim in the face and chest—conduct that is similar to the charged offenses.

past conduct and the current charges. Here, the Court finds that the three prior cases are sufficiently similar to the charged conduct. While the prior cases are not identical to the present case, in one case the defendant strangled the victim until she lost consciousness, and in two of the cases the defendant punched the victim in the face. The prior cases thereby illustrate the pattern of domestic violence in this relationship where the defendant physically accosts the victim out of anger over her desire to end their relationship. In addition, in the present case, the government alleges that the defendant took the victim's cell phone from her during the assault. This mirrors his behavior of taking, stealing, or destroying her phone in each of the prior cases, possibly to prevent her from calling for help. In the three prior cases, the victim was eventually able to get help from her parents and a neighbor, and in the present case, a passerby witnessed the assault and called 911. In sum, while defendant argues that the three prior cases are distinguishable because they occurred at the victim's home, the defendant approached the victim, and the defendant was on drugs in at least one of the incidents, the Court finds that these differences do not outweigh the similarity to the charged crimes. *See Hinton*, 31 F.3d at 822–23 (rejecting argument that prior bad acts were not sufficiently similar to charged conduct because charged offense occurred in front of the couple's children and outside the context of an argument, stating: "Even assuming their accuracy, these tangential distinctions are meaningless relative to the more essential identity remaining between the victim, the assailant, the manner of the assault and the nature of the harm involved in the present and prior acts.").

The third factor is that the prior acts must be based on sufficient evidence. "Under Rule 404(b), sufficient evidence of the prior bad acts must be presented for a jury reasonably to conclude that the act[s] occurred and that the defendant was the actor." *Hinton*, 31 F.3d at 823 (internal quotations and citations omitted) (alteration in original). Here, the defendant entered pleas in two of the cases admitting that he committed the charged assaults, while the third case was dismissed as part of the plea agreement. The government affirmed at oral argument that it does not intend to present evidence that the

defendant pled guilty or has prior convictions; rather, the government intends to have the victim testify as to the facts of what occurred during the previous incidents. *See Hinton*, 31 F.3d at 823 (rejecting defendant's argument that there was insufficient evidence of proof where only evidence of prior bad acts was victim's testimony; court was "not persuaded that where a witness testifies as to the defendant's prior bad acts, the jury must be presented with evidence corroborating the witness' testimony to satisfy the low threshold required by [this] part . . . of the test" (internal quotations and citation omitted) (alterations in original)).

The final factor is that the prior acts must not be too remote in time to the present case. "In general, the issues of relevance and remoteness are left up to the commonsense of the trial judge[,]" *Hankey*, 203 F.3d at 1170, and the Ninth Circuit has stated an "express unwillingness to establish an inflexible rule for remoteness in the context of Rule 404(b)." *Hinton*, 31 F.3d at 823 (internal quotations and citation omitted). Here, while the prior cases occurred in 2016 and thus 5 years before the charged conduct in this case, the defendant spent those 5 years incarcerated and committed the present assault just several months after being released. The defendant's actions in the prior cases and the current case show a pattern of conduct of domestic violence interrupted only by the defendant's incarceration for his prior assaults of the victim. *See Hinton*, 31 F.3d at 823 (noting jury had evidence permitting it to conclude that prior acts comprised a regular pattern of abuse and finding that "the earlier episodes in this pattern of abuse, linked to the charged assault by a chain of similar conduct, do not face the same temporal limitations as a similarly remote discrete act would encounter under Rule 404(b) analysis"); *see also Curley*, 639 F.3d at 59 (prior acts of domestic violence, though pre-dating the charged conduct by as much as 15 years, were not too remote in time because they collectively demonstrated a pattern of activity continuing up to the charged conduct).

Finally, even where evidence of other crimes is admissible for a proper purpose under Rule 404(b), the evidence may still be excluded under Rule 403 if it is more

prejudicial than probative. Here, the Court recognizes the defendant's concern that evidence of the prior cases will lead the jury to the improper conclusion that because the defendant committed prior domestic assaults against the victim, he must therefore also be guilty of assaulting the victim in this case. However, Rule 404(b) is an inclusionary rule, and "evidence of other crimes is inadmissible under this rule only when it proves nothing but the defendant's criminal propensities." *United States v. Sneezer*, 983 F.2d 920, 924 (9th Cir. 1992) (citation omitted). As described above, the Court finds that the proffered evidence is relevant and probative of the defendant's motive, intent, and absence of mistake or accident. Further, the parties request, and the Court recommends, that the District Court give a limiting instruction to lessen any possible prejudicial impact of the other act testimony. *See Dubria v. Smith*, 224 F.3d 995, 1002 (9th Cir. 2000) ("Ordinarily, a cautionary instruction is presumed to have cured prejudicial impact . . . [and t]his is not a case in which the statements at issue are so clearly prejudicial that a curative instruction could not mitigate their effect."); *Montgomery*, 150 F.3d at 1001 ("[A]n appropriate instruction limiting the purpose for which the jury could consider evidence of a defendant's prior conviction is a factor weighing in favor of admission of Rule 404(b) evidence." (internal quotations and citation omitted)); *see also Hinton*, 31 F.3d at 823 (noting that the Ninth Circuit has consistently rejected the argument that Rule 403 precludes the admission of predominantly prejudicial bad acts evidence where "the evidence was probative of intent and the district court properly instructed the jury as to the limited purpose for which the evidence was being admitted"); *Sneezer*, 983 F.2d at 924 (where government offered evidence of prior rape occurring 3 years earlier against different victim and circumstances of prior rape were nearly identical to charged conduct, court held that prior rape was not too remote in time, it was offered to prove a material and permissible element of the case to show intent and plan, and prejudicial effect did not outweigh probative value where trial judge gave limiting instruction at beginning of trial and end of testimony); *Curley*, 639 F.3d at 59 (probative value of prior domestic violence acts outweighed any unfair prejudice because prior acts paralleled the charged conduct

and were no more sensational than the charged crimes, and court gave an appropriate limiting instruction).

## II.   Motion to Preclude Government's Expert Witnesses

### A. Parties' Arguments

The defendant moves the Court to preclude testimony by the government's "blind" domestic violence expert and Sexual Assault Nurse Examiner ("SANE") Janice Lange. The defendant argues that allowing this testimony at trial will be overly prejudicial and detrimentally impact his rights to due process and a fair trial, and further that the testimony will not be helpful to the jury.

The defendant specifically contends that the government has failed to provide any evidence of the reasoning and methods behind the domestic violence expert's conclusions, and no evidence that the expert's testimony is based on sufficient facts and data, and thus has failed to satisfy the requirements of Fed. R. Evid. 702. As such, the defendant contends that the Court should either preclude the expert's testimony or require a *Daubert* hearing. The defendant further argues that the expert has no direct knowledge about the facts of this case and that the government is improperly using the expert to "smooth over" the victim's inconsistent statements and bolster her credibility. As to any argument that the purpose of the expert is to educate the jury on domestic violence, the defendant contends that this is not an obscure topic but a common problem with extensive media attention; therefore, because domestic violence is widely known about, the jury does not require education by an expert.

As to Nurse Lange, the defendant contends that her testimony on the victim's alleged sexual assault is irrelevant because the defendant has not been charged with a sexual offense, and thus any testimony on the alleged assault will be highly prejudicial. Additionally, Nurse Lange's testimony will be duplicative of treating physician Dr. David Horn's testimony and is therefore unnecessary and a waste of time. Further, allowing testimony from both medical professionals is prejudicial to the defendant because the repetitiveness of the testimony could persuade the jury that their testimony

1   must be true.

2        The government intends to call Kelly Wills, a Crisis Intervention Specialist with

3   over 25 years' experience working with victims of domestic violence and sexual assault.

4   The government contends that admission of her testimony is proper because it is both

5   relevant and reliable under Rule 702. Specifically, Ms. Wills' specialized knowledge and

6   expertise with regard to common behaviors exhibited by adult victims of sexual abuse

7   and domestic violence will help the jury to understand the evidence in this case. The

8   government rejects the defendant's contention that domestic violence is widely

9   understood, noting that court decisions have recognized that domestic violence is not a

10  concept that lay people understand and therefore expert testimony can be helpful to

11  juries.

12        As to Nurse Lange, the government contends that treating physicians can testify as

13  fact witnesses as to their first-hand observations and treatment of a patient, and as such,

14  are not treated as expert witnesses unless their testimony offers opinions that go beyond

15  the course and scope of treatment of the patient. Because Nurse Lange will testify as to

16  her first-hand observations and treatment of the victim, she is therefore a fact witness.

17  Further, any statements that the victim made to Nurse Lange regarding the assault that

18  resulted in her injuries are admissible pursuant to Fed. R. Evid. 803(4) as statements

19  made for the purposes of medical diagnosis or treatment.

20        B.  Legal Standard

21        Federal Rule of Evidence 702 provides that an expert may testify "in the form of

22  an opinion or otherwise" if: (a) "the expert's scientific, technical, or other specialized

23  knowledge will assist the trier of fact to understand the evidence or determine a fact in

24  issue;" (b) "the testimony is based on sufficient facts or data;" (c) "the testimony is the

25  product of reliable principles and methods; and" (d) "the expert has reliably applied the

26  principles and methods to the facts of the case."

27              In *Daubert*, the Supreme Court, in addressing admissibility of
            scientific expert evidence, held that FRE 702 imposes a
28          gatekeeping obligation on the trial judge to ensure that any
            and all scientific testimony . . . is not only relevant, but

reliable. While holding that the trial court has substantial discretion in discharging its gatekeeping obligation, it suggested a number of factors that the court might consider: 1) whether a theory or technique can be tested; 2) whether it has been subjected to peer review and publication; 3) the known or potential error rate of the theory or technique; and 4) whether the theory or technique enjoys general acceptance within the relevant scientific community.

*Hankey*, 203 F.3d at 1167 (internal quotations and citations omitted) (alteration in original). The requirement that proposed expert testimony "must be supported by appropriate validation—*i.e.*, 'good grounds,' based on what is known . . . establishes a standard of evidentiary reliability." *Daubert*, 509 U.S. at 590. In *Kumho Tire*,[4] the Supreme Court expanded its holding in *Daubert* to clarify that the trial court's "gatekeeping function is not limited to scientific expert testimony, but applies to all expert testimony[.]" *Hankey*, 203 F.3d at 1167.

"[T]he district court's gatekeeper role includes a preliminary assessment of whether the reasoning or methodology underlying the testimony is . . . valid and of whether that reasoning or methodology properly can be applied to the facts in issue." *United States v. Valencia-Lopez*, 971 F.3d 891, 900 (9th Cir. 2020) (internal quotations and citation omitted) (alteration in original). "This prerequisite to making the Rule 702 determination that an expert's methods are reliable requires the district court to assure that the methods are adequately explained." *Id.* (internal quotations and citation omitted). This is important because "it is the government's burden to establish the reliability of the principles and methods employed to draw a conclusion regarding *the particular matter to which the expert testimony was directly relevant*." *Id.* (internal quotations and citation omitted). Thus, while an expert's qualifications and experience are relevant, that alone "cannot establish the reliability and thus the admissibility of the expert testimony at issue." *Id.* (finding that "crucially," expert failed to link his general expertise with his conclusion and never explained how his expertise lent itself to that conclusion); *but see United States v. Sims*, 550 F. Supp. 3d 907, 919 (D. Nev. 2021) (finding expert's general

---

[4] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)

testimony about pimp culture and the general modus operandi of pimps admissible because expert's extensive experience in the field provided a reliable basis for the testimony, and distinguishing *Valencia-Lopez* because there, "testimony went beyond generalized opinions that [agent] could reliably give about drug cartels' modus operandi" and instead, "agent fashioned a new conclusion . . . based on particular facts that could be specifically applied to the case").

In *Daubert*, the Supreme Court emphasized that the Rule 702 inquiry is a flexible one, 509 U.S. at 594, and "*Kumho Tire* heavily emphasizes that judges are entitled to broad discretion when discharging their gatekeeping function." *Hankey*, 203 F.3d at 1168. As such, "not only must the trial court be given broad discretion to decide *whether* to admit expert testimony, it 'must have the same kind of latitude in deciding *how* to test an expert's reliability.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 152); *see also Valencia-Lopez*, 971 F.3d at 898 ("The reliability inquiry is a flexible one, and the district court has broad latitude to determine what factors in *Daubert*, if any, are relevant to the reliability determination." (internal quotations and citation omitted)); *United States v. Ruvalcaba-Garcia*, 923 F.3d 1183, 1189 (9th Cir. 2019) ("The reliability analysis is a malleable one tied to the facts of each case, and district courts are vested with broad latitude to decide how to test an expert's reliability and whether or not an expert's relevant testimony is reliable." (internal quotations and citation omitted)). And "[t]he focus, of course, must be solely on principles and methodology, not on the conclusions that they generate." *Daubert*, 509 U.S. at 595. Further, in considering whether testimony is admissible based on the expert's "other specialized knowledge," Rule 702 is liberally construed. *Hankey*, 203 F.3d at 1168.

While the district court is not necessarily required to hold a *Daubert* hearing, it has "an unwavering gatekeeping obligation to determine the reliability of [expert] testimony." *Valencia-Lopez*, 971 F.3d at 899. This may be satisfied by allowing the opposing party to conduct voir dire before ruling on relevance and reliability, for example, or some other reliability determination that allows a reviewing court to uphold

1   the district court's decision. *Id.*[5]

2   *Hankey* set forth a list of preliminary questions for the court to assess under Fed.

3   R. Evid. 104(a), which requires the trial judge to consider whether a witness is qualified,

4   a privilege exists, or evidence is admissible, in determining the admissibility of expert

5   testimony:

6   > Whether the opinion is based on scientific, technical, or other
    > specialized knowledge;

7

8   > Whether the expert's opinion would assist the trier of fact in
    > understanding the evidence or determining a fact in issue;

9   > Whether the expert has appropriate qualifications—i.e., some
    > special knowledge, skill, experience, training or education on
    > that subject matter.

10

11  > Whether the testimony is relevant and reliable.

12  > Whether the methodology or technique the expert uses "fits"
    > the conclusions (the expert's credibility is for the jury).

13

14  > Whether its probative value is substantially outweighed by
    > the risk of unfair prejudice, confusion of issues, or undue
    > consumption of time.

15

16  203 F.3d at 1168 (citations omitted).

17  ### C.   Analysis

18  #### i.   Domestic Violence Expert

19  The Court finds that the government's proposed domestic violence expert is the

20  proper subject of expert testimony and may properly testify at trial, provided that the

21  government can prove the factors for admissibility under Rule 702 at a *Daubert* hearing

22  or some other reliability determination proceeding before the District Judge.

23  Rule 702 has four requirements that must be met before expert testimony may be

24  admitted. The first is that the expert's specialized knowledge will help the trier of fact to

25  understand the evidence or determine a fact in issue. On this point, the Court finds the

26  Arizona Supreme Court's decision in *State v. Haskie*, 242 Ariz. 582 (2017), instructive.

27

28  ---
    [5] The Ninth Circuit has declined to decide "whether a district court fulfills its gatekeeping role without either allowing voir dire or conducting a *Daubert* hearing[,]" but has noted that "voir dire is a recommended method." *Valencia-Lopez*, 971 F.3d at 899 n.5.

There, the defendant was convicted on felony domestic violence charges after assaulting his girlfriend. The victim wrote a statement for the police describing how the defendant had beaten and strangled her, then later wrote two letters to the prosecutor recanting her earlier statement and claiming that her injuries were the result of a bar fight and that the defendant was innocent. Over the defendant's objection, the trial court admitted testimony by the prosecution's "cold"[6] domestic violence expert regarding characteristics of domestic violence victims to help the jury understand why victims return to abusers, why victims often blame themselves for what happened, and why it is "very typical" for victims to change their stories. On appeal, the defendant argued that the expert's testimony constituted impermissible offender profiling.[7] On review, the court stated that while the state cannot offer profile evidence as substantive proof of guilt, "expert testimony that explains a victim's seemingly inconsistent behavior is admissible to aid jurors in evaluating the victim's credibility." *Id.* at 586. Thus, while such evidence may also describe or refer to perpetrator characteristics and thereby has the potential to be profile evidence, the evidence is still admissible "if it is relevant for a reason other than to suggest that the defendant possesses some of those characteristics and therefore may have committed the charged crimes." *Id.* The court noted that while the outcome of this analysis will vary depending on the case, "[t]he more 'general' the proffered testimony, the more likely it will be admissible . . . [whereas] the more the testimony is tied to the defendant's characteristics, rather than to those of the victim, the more likely the admission of such testimony will be impermissibly prejudicial." *Id.* In *Haskie*, "the victim's behavior and inconsistent statements were squarely at issue [and the expert's] testimony was limited to questions designed to help the jury understand the sometimes

---

[6] The court explained that "cold" expert testimony "educates the fact-finder about general principles without applying those principles to the particular facts of the case." *Haskie*, 242 Ariz. at 585.

[7] "Profile evidence tends to show that a defendant possesses one or more of an informal compilation of characteristics or an abstract of characteristics typically displayed by persons engaged in a particular kind of activity." *Haskie*, 242 Ariz. at 585 (citation omitted). "Describing evidence as 'profile' evidence is a shorthand way of saying that the evidence is offered to implicitly or explicitly suggest that *because* the defendant has those characteristics, a jury should conclude that the defendant must have committed the crime charged." *Id.* at 585–86.

1   counterintuitive behaviors of domestic violence victims." *Id.* at 587. Thus, the testimony

2   was relevant to help the jury understand the victim's behavior and any prejudice was

3   minimal and did not outweigh the probative value.

4        Similarly, in *United States v. Lopez*, 913 F.3d 807 (9th Cir. 2019), the court held

5   that expert testimony on battered woman syndrome ("BWS")[8] and the effects of past

6   abuse may be used by a defendant to support a duress defense and rehabilitate her

7   credibility. In addressing the relevance of such testimony on credibility, the Ninth Circuit

8   noted that:

> Courts addressing psychological states analogous to BWS, such as rape trauma syndrome and child sexual abuse accommodation syndrome, . . . have generally held expert opinion admissible for the purpose of disabus[ing] the jury of some widely held misconceptions about [the] victims, so that it may evaluate the evidence free of the constraints of popular myths. To this end, [j]urors faced with testimony from a battered woman concerning her abuse and its effects may doubt the testimony because they do not believe that a woman subject to such abuse would stay with her abuser without alerting police or others.

15   *Id.* at 823 (internal quotations and citation omitted) (alterations in original). Thus, expert

16   testimony on BWS "can provide juries an understanding of why victims of abuse

17   sometimes make inconsistent statements or act in ways that appear counterintuitive to a

18   layperson." *Id.*[9]

19        Here, the Court finds that Ms. Wills' blind testimony about the nature of domestic

---

[8] BWS "is a set of psychological and behavioral reactions exhibited by victims of severe, long-term, domestic physical and emotional abuse." *Lopez*, 913 F.3d at 816 (citation omitted).

[9] The *Lopez* court cited the Eighth Circuit's decision in *Arcoren v. United States*, 929 F.2d 1235 (8th Cir. 1991) as an example. There, the victim recanted at trial her prior grand jury testimony that the defendant had raped her, and the government sought to introduce expert testimony on BWS to "aid the jury in determining the defendant's credibility by providing the jury an explanation for the victim's change in testimony." *Lopez*, 913 F.3d at 823–24 (citing *Arcoren*, 929 F.2d at 1239). The Eighth Circuit agreed, finding that "[t]he expert testimony thus 'provided the jury with information that would help it to determine which' version of the victim's 'testimony to credit.'" *Lopez*, 913 F.3d at 824 (quoting *Arcoren*, 929 F.2d at 1240). The *Lopez* court also cited its earlier decision in *United States v. Bighead*, 128 F.3d 1329 (9th Cir. 1997), where it "held that expert testimony on [child] abuse had 'significant probative value in that it rehabilitated (without vouching for) the victim's credibility after she was cross-examined about the reasons she delayed reporting and about the inconsistencies in her testimony.'" *Lopez*, 913 F.3d at 824 (quoting *Bighead*, 128 F.3d at 1331).

violence relationships will help the jury to evaluate the evidence by understanding the dynamic of the relationship between the parties in this case and why the charged assaults occurred.[10] *See United States v. Brown*, 2020 WL 708713, at *1 (D. S.D. Feb. 12, 2020) ("The complex background of individuals who have been subject to domestic violence, as well as how those individuals generally perceive and react to ongoing danger and threats, is beyond the common understanding of the jurors and, therefore, is helpful."). Further, Ms. Wills' testimony regarding why victims and perpetrators might behave in certain ways will help the jury to evaluate the victim's inconsistent statements and assess her credibility. *See Lopez*, 913 F.3d at 823; *Haskie*, 242 Ariz. at 586–87. Ms. Wills will not be asked to opine on the specific facts of this case and thus her testimony will not unfairly invade the province of the jury. *See Haskie*, 242 Ariz. at 586 ("[t]he more 'general' the proffered testimony, the more likely it will be admissible"). It will still be up to the jury to evaluate all of the evidence and testimony presented, assess the victim's and the defendant's credibility, and make an ultimate determination of guilt.

The second and third factors require that the expert's testimony be based on sufficient facts or data, and that the testimony is the product of reliable principles and methods. Here, the government avers that Ms. Wills is qualified based on her training and experience. The defendant counters that the government has failed to explain what Ms. Wills' methodology is or how that methodology will aid the jury. While Ms. Wills' background is indeed extensive—the government states that Ms. Wills has over 25 years' experience working with domestic violence victims, has served as a therapist for crime victims, is a certified Clinical Trauma Professional, and has testified as an expert in state court 26 times—training and experience alone are not enough to find expert testimony admissible under Rule 702. Thus, the District Judge must still evaluate the reliability and relevance of Ms. Wills' proposed testimony for this particular case.

The fourth factor requires that the expert has reliably applied the principles and

---

[10] At oral argument, the government confirmed that Ms. Wills will not review any of the disclosure in this case and will not be asked any questions specific to the facts of this case; her testimony will be based on her experience in domestic violence cases generally.

methods to the facts of the case at hand. Here, counsel for the government explained that Arizona Rule of Evidence 702 mirrors the same requirements as the federal rule, and in state child abuse prosecutions the court typically does not require that the fourth prong be met because it would be inappropriate to have an expert opine on the specific facts of a case by essentially telling the jury whether a victim should be believed or not. *See Haskie*, 242 Ariz. at 585 (stating that Ariz. R. Evid. 702 "permits the admission of 'cold' expert testimony that educates the fact-finder about general principles without applying those principles to the particular facts of the case" in both child and adult abuse cases). Here, the Court agrees that having the expert answer questions based on the specific facts of this case would improperly invade the province of the jury. Having Ms. Wills testify as a blind expert negates this issue and in effect sanitizes her testimony.

Finally, even if all four factors of Rule 702 are met, expert testimony may still be excluded under Rule 403 if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury. Here, the Court finds that the probative value of Ms. Wills' testimony is not outweighed by prejudicial concerns. While the defendant argues that using Ms. Wills' testimony to explain away the victim's waffling will be prejudicial to the defendant and render the trial unfair, "[r]elevant evidence is inherently prejudicial," *Hankey*, 203 F.3d at 1172 (citation omitted), and "[e]vidence helpful in evaluating the credibility of a witness is of consequence to the determination of the action." *Id.* at 1171; *see Haskie*, 242 Ariz. at 587 ("just because expert testimony about behavioral characteristics is exceedingly persuasive does not mean it is *unfairly* prejudicial" (citation omitted)); *see also Ruvalcaba-Garcia*, 923 F.3d at 1188 (Under Rule 702, "[r]elevancy simply requires that the evidence logically advance a material aspect of the party's case." (internal quotations and citation omitted)). Here, as in *Lopez*, the Court offers no opinion as to whether the jury will believe the victim or not, but the proposed expert testimony has significant probative value in aiding the jury to make that determination by providing an understanding of the dynamics of domestic violence and an explanation for the victim's inconsistent

statements. 913 at 824–25; *see also Bighead*, 128 F.3d at 1331 (expert's testimony had significant probative value in rehabilitating child abuse victim's credibility after she was cross-examined about her inconsistent statements and did not infringe on jury's province to determine witness credibility where expert testified about a class of victims generally and not the particular testimony of the victim in the case; "jury was free to determine whether the victim . . . simply fabricated the incidents"); *Arcoren*, 929 F.2d at 1240–41 (in prosecution of defendant for sexual abuse of his estranged wife, where victim recanted her prior testimony at trial, expert testimony on BWS was admissible to aid the jury in evaluating the evidence and determining which of the victim's statements were credible, and did not impinge upon jury's role to determine witness credibility).

In sum, the Court finds that the government's proposed blind domestic violence expert is the proper subject of expert testimony, and that the admissibility of this testimony pursuant to *Daubert* and Rule 702 is best addressed by the District Judge. *See Daubert*, 509 U.S. at 589 (Rule 702 imposes a gatekeeping obligation on the trial judge).

### ii.  Nurse Lange

The Court finds that Nurse Lange may properly testify as a fact witness. At oral argument, the government clarified that Nurse Lange will not be called as an expert witness; she will only testify to things occurring within the course and scope of her treatment and evaluation of the victim. As this Court has noted, treating physicians do not have to be identified and disclosed as expert witnesses because they "may testify as percipient witnesses and may offer opinion testimony provided that the opinions were formed in the course of treatment." *Amrani v. United States*, 2015 WL 176591, at *1 (D. Ariz. Jan. 14, 2015); *see also St. Vincent v. Werner Enterprises, Inc.*, 267 F.R.D. 344, 345 (D. Mont. 2010) (treating physicians "are generally not subject to the mandatory expert witness disclosure requirements . . . [and i]f properly based on personal knowledge, history, treatment of the patient, and facts of his or her examination and diagnosis, then the treating physician may give an opinion as to the cause of the injury"). Thus, there is no merit to the defendant's argument that RN Lange's testimony "would be

improper expert testimony, unless the United States were to attempt to elicit an opinion at trial which was not formed during the course of treatment." *Amrani*, 2015 WL 176591 at *1.

The government stated that it does not necessarily intend to elicit testimony regarding the sexual assault portion of Nurse Lange's examination because that conduct is not charged in this case.[11] What the government does intend to ask Nurse Lange about is her training in conducting forensic strangulation exams and the strangulation exam she conducted of the victim here. The government's focus is on the injuries the victim suffered as a result of the physical assault and Nurse Lange's documentation of those injuries.

The defendant argues that Nurse Lange's testimony will be irrelevant and cumulative because the government already intends to call Dr. Horn, who treated the victim, and that having repetitive testimony will prejudice the defendant by persuading the jury that it must be true. The Court disagrees. In particular, Nurse Lange's forensic strangulation exam of the victim and documentation of the victim's injuries are clearly relevant and will not confuse the issues or mislead the jury. Rather, the testimony will assist the jury in understanding the victim's injuries in relation to the charged assaults. *See* Fed. R. Evid. 401. Further, the government stated at oral argument that the physician who treated the victim did not take any photographs and that the medical records from that examination are slim because the hospital was focused on making sure there were no serious or life-threatening issues so that they could release the victim for the sexual assault examination at another hospital.[12] In contrast, Nurse Lange's examination took several hours and she documented the victim's injuries on a body chart and took photographs. Thus, the Court finds that Nurse Lange's testimony will not be overly

---

[11] The government avers that SANE nurses never testify whether or not a sexual assault occurred, and in fact, one of the things they do testify to is that it is not uncommon in sexual assault cases to see no injuries, and women can have injuries from consensual sex. Thus, whether there are injuries or not is not indicative of sexual assault one way or another.

[12] The government stated at oral argument that the doctor who treated the victim recently moved to Hawaii, so the government may not call him at all, or may call the resident who was with him instead.

repetitive or cumulative of Dr. Horn's testimony.

In sum, the Court finds that Nurse Lange may properly testify as a fact witness and that the probative value of her testimony is not outweighed by Rule 403 concerns of unfair prejudice, confusion of the issues, misleading the jury, wasting time, or needlessly presenting cumulative evidence.[13]

## RECOMMENDATION

For the reasons stated above, the Court recommends that that District Court deny Defendant's Motion to Preclude Government's Expert Witnesses (Doc. 40) and Defendant's Motion to Preclude and Response to Government's 404(b) Notice (Doc. 41).

Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and file written objections within 14 days of being served with a copy of this Report and Recommendation. A party may respond to the other party's objections within fourteen days. No reply brief shall be filed on objections unless leave is granted by the district court. If any objections are filed, this action should be designated case number: **CR 21-00955-TUC-JCH**. Failure to timely file objections to any factual or legal determination of the Magistrate Judge may be considered a waiver of a party's right to de novo consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc).

Dated this 13th day of May, 2022.

Eric J. Markovich
United States Magistrate Judge

---

[13] Pursuant to Fed. R. Evid. 803(4), the Court further finds that Nurse Lange may testify as to statements the victim made to her during the examination. "[O]ut-of-court statements made for purposes of medical diagnosis or treatment are admissible as an exception to the hearsay rule . . . because the rationale for excluding hearsay statements does not apply to them . . . because they are made under circumstances in which the declarant would be particularly unlikely to lie." *United States v. Kootswatewa*, 893 F.3d 1127, 1132 (9th Cir. 2018) (finding district court properly exercised its discretion to admit child sex abuse victim's statements made to nurse during sexual assault exam).