**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

United States of America,

        Plaintiff,

v.

Jared Isiah Varela,

        Defendant.

No. CR-21-00955-TUC-JCH (EJM)

**REPORT AND
RECOMMENDATION**

        Pending before the Court is Defendant Jared Isiah Varela's ("Varela") Motion to Cure Duplicitous Indictment. (Doc. 38). The defendant contends that Count Two of the indictment impermissibly charges two separate criminal offenses in one count: strangling and attempting to strangle. The Court finds that 18 U.S.C. § 113(a)(8) proscribes two separate offenses, assault by strangling or suffocating and assault by attempting to strangle or suffocate. The Court therefore finds that Count Two of the indictment is duplicitous because it charges both completed conduct and attempted conduct in the same count. The Court further finds that the appropriate remedy is to give an unanimity instruction at trial requiring all jurors to agree as to which of the charged offenses the defendant committed. Accordingly, for the reasons set forth below, the Court finds that the defendant's Motion should be granted.

## FACTUAL BACKGROUND

        On May 5, 2021 a federal grand jury sitting in Tucson, Arizona returned an Indictment against Varela charging him with three felony offenses relating to domestic

violence. (Doc. 3). Count One charges Varela with intentionally, knowingly, and recklessly assaulting an intimate partner and dating partner, resulting in substantial bodily injury, in violation of 18 U.S.C. §§ 1153 and 113(a)(7). Count Two charges Varela with intentionally and knowingly assaulting an intimate partner and dating partner by strangling and attempting to strangle her, in violation of 18 U.S.C. §§ 1153 and 113(a)(8). Count Three charged Varela with domestic assault by a habitual offender, in violation of 18 U.S.C. § 117, but was later dismissed by the District Court. *See* Docs. 49 and 50.

On March 4, 2022 the defendant filed the motion at issue here.

On May 5, 2022 the Court held oral arguments on the defendant's motion.

## DISCUSSION

### I.  Parties' Arguments

The defendant argues that the indictment impermissibly charges two offenses in a single count and is therefore duplicitous. Specifically, Count Two charges the defendant with completed conduct and attempted conduct—strangling and attempting to strangle. Relying on Ninth Circuit case law on alien smuggling[1] and illegal entry[2] statutes wherein the court concluded that Congress intended "attempt" to incorporate common law attempt, the defendant argues that the inclusion of "attempt" in a criminal statute usually means that the statute punishes two separate offenses—completed offenses and attempted offenses—each with a different mental state. Further, because completed offenses and attempted offenses have different mens rea requirements, there are certain defenses that are only available for specific intent crimes. The defendant thus reasons that the Court should conclude that "attempt to strangle" incorporates common law attempt and requires specific intent. The defendant requests that the Court order the government to amend the

---

[1] *United States v. Ramirez-Martinez*, 273 F.3d 903 (9th Cir. 2001) (finding that offense of attempting to transport illegal aliens is a specific intent crime, and holding indictment charging both attempting to transport and actually transporting illegal aliens under 8 U.S.C. § 1324(a)(1)(A)(ii) was duplicitous), *overruled on other grounds by United States v. Lopez*, 484 F.3d 1186 (9th Cir. 2007)
[2] *United States v. Gracidas-Ulibarry*, 231 F.3d 1188 (9th Cir. 2000) (holding offense of attempted illegal reentry under 8 U.S.C. § 1326 is a specific intent crime)

indictment to specify what offense conduct is alleged, or, alternatively, that the Court provide the jury with a specific unanimity instruction.

The government argues that an indictment is not duplicitous merely because it alleges multiple different acts that are different ways of committing the same offense. Thus, there is a sharp distinction between alternative elements, which create separate crimes, and alternative means, which create alternate ways of committing one crime. Here, the government contends that § 113(a)(8) charges the offense of assault and that the statute then lists several alternative means of committing the assault: strangling, suffocating, or attempting to strangle or suffocate. As such, it is an indivisible statute and the government may properly charge the defendant in the conjunctive where the means are listened disjunctively in the statute. The government further argues that the Ninth Circuit has held that the definition of "assault" includes attempts, that § 113 incorporates the common law definition of assault as a willful attempt to inflict injury, and that § 113(a)(8) is a general intent crime. Finally, the government contends that even if the Court finds Count Two duplicitous, it is not required to elect a theory prior to trial and the appropriate remedy is an unanimity instruction.

## II.   Legal Standard

"Duplicity is the joining in a single count of two or more distinct and separate offenses." *United States v. UCO Oil Co.*, 546 F.2d 833, 835 (9th Cir. 1976). A duplicitous indictment raises multiple concerns:

> The vices of duplicity arise from breaches of the defendant's Sixth Amendment right to knowledge of the charges against him, since conviction on a duplicitous count could be obtained without a unanimous verdict as to each of the offenses contained in the count. A duplicitous indictment also could eviscerate the defendant's Fifth Amendment protection against double jeopardy, because of a lack of clarity concerning the offense for which he is charged or convicted.

*United States v. Aguilar*, 756 F.2d 1418, 1420 n.2 (9th Cir. 1985). On the other hand, an indictment is not duplicitous where one count "merely state[s] multiple ways of committing the same offense." *United States v. Arreola*, 467 F.3d 1153, 1161 (9th Cir. 2006). This is because "[s]ome crimes can be committed by several alternative means[,

and i]t is proper for the government to charge different means of a crime connected by conjunctions in the indictment when the means are listed disjunctively in the statute." *United States v. Renteria*, 557 F.3d 1003, 1008 (9th Cir. 2009).

To determine whether a statute "creates separate offenses, or simply describes alternative means to commit the same crime, [the court] employ[s] the analytical framework established in *UCO Oil* . . . : (1) 'language of the statute itself,' (2) 'the legislative history and statutory context,' (3) the type of conduct proscribed, and (4) the 'appropriateness of multiple punishment for the conduct charged in the indictment.'" *Arreola*, 467 F.3d at 1157 (quoting *UCO Oil*, 546 F.2d at 836–38).

"Once it is determined that [a] statute defines but a single offense, it becomes proper to charge the different means, denounced disjunctively in the statute, conjunctively in each count of the indictment." *UCO Oil*, 546 F.2d at 838. "Proof of any one of the allegations will sustain a conviction, but a judgment of guilty will bar any further prosecution with respect to any of the prohibited means embraced within the count." *Id.* Further, "[i]t is not a valid objection that the government has not disclosed its theory of proof in the indictment, nor that the jury, in arriving at a unanimous verdict, may not agree on the particular means by which the offense was committed." *Id.*

However, where the indictment is duplicitous, a defendant "may [still] be properly prosecuted and convicted if either (1) the government elects between the charges in the offending count, or (2) the court provides an instruction requiring all members of the jury to agree as to which of the distinct charges the defendant actually committed." *Ramirez-Martinez*, 273 F.3d at 915. The Ninth Circuit has also stated that in lieu of election or dismissal of the duplicitous indictment, the court may require the government to prove both offenses as charged. *See Aguilar*, 756 F.2d at 1424 n.4.

**III.    Analysis**

To determine whether § 113(a)(8) "creates separate offenses, or simply describes alternative means to commit the same crime," the Court considers the factors set forth in *UCO Oil*: "(1) [the] 'language of the statute itself,' (2) 'the legislative history and

statutory context,' (3) the type of conduct proscribed, and (4) the 'appropriateness of multiple punishment for the conduct charged in the indictment.'" *Arreola*, 467 F.3d at 1157 (quoting *UCO Oil*, 546 F.2d at 836–38). While the undersigned appreciates the government's efforts to persuade the Court that § 113(a)(8) proscribes a single, general intent offense that may be committed by several alternative means, the law of this circuit is clear that attempt crimes require specific intent. As such, for the reasons explained below, the Court finds that Count Two of the indictment is duplicitous because it charges both a completed offense and an attempted offense in the same count.

### A. Language of the statute

The Court first looks to the text of the statute itself. Section 113(a) sets forth punishments for assaults within the maritime and territorial jurisdiction of the United States, stating that "[w]hoever . . . is guilty of an assault shall be punished as follows[.]" Pursuant to § 113(a)(8), "[a]ssault of a spouse, intimate partner, or dating partner by strangling, suffocating, or attempting to strangle or suffocate" is punishable by a fine and/or imprisonment for up to 10 years. "As a matter of grammatical construction, the use of the disjunctive indicates that Congress was addressing [] separate acts." *Arreola*, 467 F.3d at 1157. However, "[w]hile it is clear that the statute proscribes [] distinct *acts*, it is not clear from the statutory language that each *act* is a separate *offense*." *Id.*

In *Rendon v. Holder*, 764 F.3d 1077 (9th Cir. 2014), the court applied the Supreme Court's decision in *Descamps v. United States*, 570 U.S. 254 (2013), to determine whether a statute written in the disjunctive was divisible or indivisible. The Ninth Circuit noted that "[t]he critical distinction is that while indivisible statutes may contain multiple, alternative *means* of committing the crime, only divisible statutes contain multiple, alternative *elements* of functionally separate crimes." *Rendon*, 764 F.3d at 1084–85 (citing *United States v. Cabrera–Gutierrez*, 756 F.3d 1125, 1137 n.16 (9th Cir. 2014) ("[U]nder *Descamps*, what must be divisible are the elements of the crime, not the mode or means of proving an element.")). "While the jury faced with a divisible statute must unanimously agree on the particular offense of which the petitioner has been convicted

(and thus, the alternative element), the opposite is true of indivisible statutes[.]" *Id.* at 1085. Thus, "*elements* [are] those circumstances on which the jury must unanimously agree, while . . . *means* [are] those circumstances on which the jury may disagree yet still convict." *Id.* at 1086.

Here, the Court acknowledges the government's argument that § 113(a)(8) was not constructed with separate subparts for completed offenses and attempted offenses with different punishments for each, therefore suggesting that the statute proscribes a single offense. *See Arreola*, 467 F.3d at 1157 (where the punishments associated with a violation of a statute do not vary according to what means the defendant employed, this factor weighs against a finding of duplicity), and 1158 ("The statute lists all of the acts of violation in one sentence, and imposes a single penalty for all of them, a construction which indicates that Congress did not mean to create more than one offense." (quoting *United States v. Street*, 66 F.3d 969, 974 (8th Cir. 1995))). However, this factor is not determinative. For example, both the federal alien smuggling and illegal reentry statutes proscribe the same penalties for completed conduct and attempted conduct. *See* 8 U.S.C. §§ 1324, 1326. Further, while the government argues that § 113(a)(8) charges one offense that may be committed be several alternative means, the government has not pointed to, and the Court has not found, any caselaw holding that an attempt to commit a crime is a "means" rather than an "element" of the offense. Rather, in *Ramirez-Martinez*, 273 F.3d 903, the Ninth Circuit specifically found that attempting to transport illegal aliens and actual transportation under § 1324(a)(2) are separate and distinct crimes with different mens rea requirements.

Thus, while § 113(a)(8) consists of a single sentence and sets forth a single penalty, the statute clearly identifies two separate offenses: the completed offense of assault by strangling or suffocating, and the attempted offense of assault by attempting to strangle or suffocate. This is mirrored in the Ninth Circuit Model Jury Instruction for § 113(a)(8), which states that the government is required to prove the following: "First, the defendant assaulted a [spouse] [intimate partner][, or] [dating partner] by [strangling]

[suffocating] [, or] [attempting to [strangle] [or] [suffocate]] [him/her]; and Second, the assault took place on [*specify place of federal jurisdiction*]." Model Crim. Jury Instr. 9th Cir. 8.10A (2021). The bracketed portions of the first part of the instruction thus indicate that the government must prove either the offense of assault by strangulation or suffocation, or the offense of assault by attempted strangulation or suffocation.

The Court therefore concludes that the use of "or" in the phrase "strangling, suffocating, or attempting to . . ." indicates that the statute proscribes two separate offenses with functionally different elements: completed conduct and attempted conduct. In turn, each of those offenses can be committed by two alternative means: strangling or suffocating.

### B. Legislative history and statutory context

The second *UCO Oil* factor requires the Court to consider whether the statute's context or legislative history give any indication as to whether Congress intended § 113(a)(8) to create separate offenses. In *United States v. Lamott*, 831 F.3d 1153 (9th Cir. 2016), the Ninth Circuit held that assault by strangulation under § 113(a)(8) is a general intent crime. While the court reached this conclusion after a detailed analysis of the statute's legislative history, *Lamott* did not consider whether § 113(a)(8) effectively creates two separate offenses, or whether attempt crimes under § 113(a)(8) require specific or general intent. *Lamott's* examination of the history of violence against Native American women and Congress's reauthorization of the Violence Against Women Act is no doubt compelling, but *Lamott* simply has no bearing on the issue of duplicity presently before this Court. As in *Lamott*, this Court's research found that Congress's focus in enacting § 113(a)(8) was to protect Native women from strangulation and suffocation by their intimate partners by enabling federal prosecutors to seek tougher sentences for these crimes. *See* S. REP. NO. 112-265 (2012); 159 CONG. REC. S480-02 (daily ed. Feb. 17, 2013); 159 CONG. REC. E217-03 (daily ed. Feb. 28, 2013); *see also* Leslie A. Hagen, *Violent Crime in Indian Country and the Federal Response*, 69 DOJ J. Fed. L. & Prac. 79 (2021). However, the statute's legislative history reveals nothing as to Congress's intent

that the statute proscribe a single, general intent offense, or multiple offenses with different mens rea requirements. The Court thus finds that this factor is neutral in the duplicity analysis.

### C. Type of conduct proscribed

The third factor requires the Court to consider whether § 113(a)(8) proscribes "distinctly different kinds of conduct," or whether the acts listed are "regarded as [falling] within the conventional understanding" of one crime. *UCO Oil*, 546 F.2d at 837. Where the proscribed acts "merge into each other, blurring any conceptual distinctions," it is less likely that the statute creates separate offenses. *Id.*

Here, § 113(a)(8) applies to assault by strangling, suffocating, or attempting to strangle or suffocate. As an initial matter, the statute provides different definitions for "strangle" and "suffocate" and thus plainly defines distinctly different kinds of conduct.[3] These terms can be interpreted as defining alternative means for committing the single offense of assault. More importantly, however, the statute refers to assault by strangling/suffocating or attempting to strangle/suffocate. While the Court finds that conceptually, attempting to strangle (or suffocate) may seemingly merge into the act of actually strangling (or suffocating), a completed act denotes something distinctly different than an attempted act. This is reflected in the case law discussing the common law definition of "assault" as requiring the government to prove culpable intent for attempt offenses.

In *Lamott*, the court noted that "[f]ew areas of criminal law pose more difficulty than the proper definition of the mens rea required for any particular crime[, and i]n particular, the distinction between general and specific intent has been the source of a good deal of confusion." 831 F.3d at 1156 (internal quotations and citation omitted). "In a crime requiring 'specific intent,' the government must prove that the defendant subjectively intended or desired the proscribed act or result." *Id.* "By contrast, a general

---

[3] "Strangling" is to impede "the normal breathing or circulation of the blood of a person by applying pressure to the throat or neck," whereas "suffocating" is to impede "the normal breathing of a person by covering the mouth of the person, the nose of the person, or both." § 113(b)(4), (5).

intent crime requires only that the act was volitional (as opposed to accidental), and the defendant's state of mind is not otherwise relevant." *Id.* Here, § 113(a)(8) does not specify a particular mental state requirement, nor does it define "assault."

"Assault had two meanings at common law. A criminal assault was an attempt to commit a battery. A tortious assault was an act which put another in reasonable apprehension of immediate bodily harm." *United States v. Dupree*, 544 F.2d 1050, 1051 (9th Cir. 1976). Both definitions were incorporated into the federal definition of assault as either (1) "a willful attempt to inflict injury upon the person of another, or [(2)] by a threat to inflict injury upon the person of another which, when coupled with an apparent present ability, causes a reasonable apprehension of immediate bodily harm." *Id.* The federal definition of assault thus also relates to the common law meaning of "attempt" as "the specific intent to 'engage in criminal conduct and . . . an overt act which is a substantial step towards committing the crime.'" *Gracidas-Ulibarry*, 231 F.3d at 1192 (citation omitted).

The Ninth Circuit has "defined willfulness as a 'specific intent to do an act forbidden by law,' and held that the element of willfulness renders an offense a specific intent crime." *United States v. Jim*, 865 F.2d 211, 213 (9th Cir. 1989) (citation omitted). Thus, as the court "construe[s] the law of our circuit, attempt includes an element of specific intent even if the crime attempted does not." *United States v. Sneezer*, 900 F.2d 177, 179 (9th Cir. 1990) (holding that while the crime of sexual abuse is general intent, attempted sexual abuse is a specific intent crime); *see id.* at n.3 (concluding "that the rule of [*United States v. Darby*, 857 F.2d 623 (9th Cir. 1988)] and its predecessors requiring specific intent for attempt has 'successfully posed as the law of the circuit' long enough for us to apply it here"); *Gracidas-Ulibarry*, 231 F.3d at 1192–93 (collecting cases); *see also United States v. Acosta-Sierra*, 690 F.3d 1111, 1123 (9th Cir. 2012) ( "we have long held that mens rea, 'the evil purpose or mental culpability which was the essential mental component of common-law assault and battery,' is an essential element of forcible assault under [18 U.S.C. §] 111" (citation omitted)). The *Sneezer* court noted that this

1   formulation of attempt as requiring specific intent "is consistent with the classic legal

2   definition[,]" citing the following examples: (1) "when we say that a man attempted to do

3   a thing, we mean that he intended to do, specifically, it, and proceeded in a certain way in

4   the doing. The intent in the mind covers the thing in full; the act covers it only in part";

5   (2) "to constitute an attempt, there must be the intent to commit the crime"; and (3) the

6   "mental state of attempt is the specific intent to do something the law forbids." 900 F.2d

7   at 179–80 (internal quotations and citations omitted).[4] Drawing on the common law

8   meaning of attempt, the Ninth Circuit therefore holds that an attempt to commit a crime

9   "comprises two elements: '(1) an intent to engage in criminal conduct, [and] (2) an overt

10  act constituting a substantial step toward the commission of the crime.'" *United States v.*

11  *Iribe*, 564 F.3d 1155, 1161 (9th Cir. 2009) (citation omitted).[5]

12

13  [4] The Ninth Circuit applies this same reasoning in the immigration context. In *Ramirez-
    Martinez*, the court held that an indictment charging both attempting to transport and
14  actually transporting illegal aliens under 8 U.S.C. § 1324(a)(1)(A)(ii) was duplicitous,
    reasoning that Congress intended to incorporate the common law meaning of "attempt"
15  into § 1324 and "[a]t common law, 'the crime of attempt requires a showing of specific
    intent even if the crime attempted does not.'" 273 F.3d at 914 (quoting *Gracidas-
16  Ulibarry*, 231 F.3d at 1192 (holding that the offense of attempting to reenter the U.S.
    under 8 U.S.C. § 1326 was a specific intent crime)). *Ramirez-Martinez* explained that
17  "[i]n Model Penal Code terms, specific intent corresponds to 'purpose,' while general
    intent corresponds to 'knowledge.'" *Id.* Thus, under § 1324, "to convict a defendant of
18  attempted transportation, the government must prove . . . that the defendant had the
    purpose, *i.e.*, the conscious desire, to transport an undocumented alien within the United
19  States." *Id.* Conversely, "[t]o convict a defendant of actual transportation, the government
    need show only that the defendant transported the alien within the United States with
20  knowledge or in reckless disregard of the alien's undocumented status." *Id.* The court
    therefore found that "attempting to transport, which requires specific intent, and actual
21  transportation, which requires a showing of general intent, are separate and distinct
    crimes." *Id.*
22  [5] The defendant cites a number of federal statutes that require proof of culpable intent and
    a substantial step for attempt charges:
23      18 U.S.C. § 844(i) federal arson statute penalties: "Whoever maliciously damages
    or destroys, or attempts to damage or destroy, by means of fire . . . shall be imprisoned
24  for not less than 5 years and not more than 20 years . . . ." *See United States v. Candoli*,
    870 F.2d 496, 503 (9th Cir. 1989) ("To obtain a conviction for attempt, the prosecution
25  was required to present evidence establishing both culpable intent and conduct
    constituting a substantial step toward the commission of the crime that is in pursuit of
26  that intent.").
        18 U.S.C. § 2113 bank robbery: "Whoever, by force and violence, or by
27  intimidation, takes, or attempts to take . . . or obtains or attempts to obtain by extortion . .
    . ; or Whoever enters or attempts to enter any bank . . . with intent to commit . . . any
28  felony . . . . Shall be fined under this title or imprisoned not more than twenty years, or
    both." *See United States v. Buffington*, 815 F.2d 1292, 1301 (9th Cir. 1987) ("A
    conviction for attempt requires the government to prove (1) culpable intent, and (2)

- 10 -

There is no caselaw explicitly holding that an indictment charging both completed conduct and attempted conduct under § 113(a)(8) is duplicitous because the offenses have different mens rea requirements. Nor, as the Court noted above, do there appear to be any opinions holding that "attempt" is a means to commit a crime rather than an element of the offense. And while *UCO Oil* set forth factors for courts to consider in analyzing duplicity*,* the Ninth Circuit has "not developed a uniform approach to determine whether an offense is a general or specific intent crime." *Jim*, 865 F.2d at 213. In *Lamott*, the court determined that Congress intended § 113 to operate as an assault and battery statute, reasoning "[t]hat Congress meant 'battery' when it said 'assault' in § 113 is evidenced by the fact that many of § 113's provisions . . . require physical contact—a hallmark of common law battery but not of common law assault." 831 F.3d at 1157; *see*

---

conduct constituting a substantial step toward commission of the crime that is in pursuit of that intent.").

18 U.S.C. § 2112 robbery: "Whoever robs or attempts to rob another of any kind or description of personal property belonging to the United States, shall be imprisoned not more than fifteen years." *See United States v. Ornelas*, 906 F.3d 1138, 1145 (9th Cir. 2018) ("Congress's use of the common law terms 'robbery' and 'attempted robbery' in § 2112 imported the common law meanings of those terms. The district court therefore should have instructed the jury that, to convict Moreno of attempted robbery, it needed to conclude beyond a reasonable doubt that he had formed the specific intent to . . . .").

18 U.S.C. § 2111 robbery: "Whoever, within the special maritime and territorial jurisdiction of the United States, by force and violence, or by intimidation, takes or attempts to take from the person or presence of another anything of value, shall be imprisoned not more than fifteen years." *See United States v. Goldtooth*, 754 F.3d 763, 770 (9th Cir. 2014) (holding that while robbery is a general intent crime, attempted robbery under § 2111 requires proof of specific intent).

18 U.S.C. § 1344 bank fraud: "Whoever knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys. . . . by means of false or fraudulent pretenses . . .; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both." *See United States v. McNeil*, 320 F.3d 1034, 1037 (9th Cir. 2003) (finding that "The facts unmistakably support the reasonable inference that [the defendant] took substantial steps in preparation for engaging in a course of deception toward the bank in order to transfer the money from the 'Doe' account to an account in his name.").

18 U.S.C. § 1956(a)(3) money laundering: "Whoever, with the intent-- (A) to promote the carrying on of specified unlawful activity; (B) to conceal or disguise the nature, location, source, ownership, or control of property believed to be the proceeds of specified unlawful activity; or (C) to avoid a transaction reporting requirement under State or Federal law, conducts or attempts to conduct a financial transaction . . . shall be fined under this title or imprisoned for not more than 20 years, or both." *See United States v. Nelson*, 66 F.3d 1036, 1042 (9th Cir. 1995) ("An attempt conviction requires evidence that the defendant intended to violate the statute, and that he took a substantial step toward completing the violation.").

1    *United States v. Watts*, 798 F.3d 650, 652–53 (7th Cir. 2015) ("In 18 U.S.C. § 113(a),

2    'assault' primarily means common law 'battery,' . . . [and] subsections (4), (6), (7), and

3    (in part) (8) punish common law battery.").[6] The Court finds that the converse is also

4    true: where Congress said "assault" in the phrase "assault . . . by . . . attempting to

5    strangle or suffocate," Congress did actually mean "assault" in the common law sense as

6    an attempt to commit a battery. *See Watts*, 798 F.3d at 652 (explaining that the meaning

7    of "assault" in § 113(a) "could include a common law 'assault'—for example had Watts

8    flung the chair at the officer intending to hit him but missed, so that there was no physical

9    contact"). Indeed, because § 113 does not define "assault," the Ninth Circuit, and nearly

10   all other circuits, have adopted the common law definition of assault as a willful attempt

11   to inflict injury or a threat to inflict injury. *United States v. Lewellyn*, 481 F.3d 695, 697

12   (9th Cir. 2007); *see also United States v. Dat Quoc Do*, 994 F.3d 1096 (9th Cir. 2021)

13   (stating that the federal assault statute incorporates the common law definition of assault

14   as a "willful attempt to inflict injury" or "a threat to inflict injury"). The only logical

15   conclusion then, and consistent with the authority discussed above, is that a charge of

16   assault by attempting to strangle or suffocate under § 113(a)(8) requires that the

17   government prove the defendant's specific intent.

18        The Court further finds that the statutory definitions of "strangling" and

19   "suffocating" as intentional, knowing, or reckless acts demonstrate that a completed

20   offense under § 113(a)(8) requires only general intent, as all that the statute requires is

21   that the defendant's conduct be volitional, as opposed to accidental. § 113(b)(4), (5); *see*

22   *Lamott*, 831 F.3d at 1156, 1158 n.1 (rejecting argument that the government converted §

23   113(a)(8) to a specific intent crime by charging in the indictment that defendant

24   "intentionally assaulted" the victim by strangling, reasoning: "'Intentionally' applies to

25   the act itself, and serves merely to distinguish nonvolitional or accidental conduct. The

26   requirement that an act be done 'intentionally' is 'a perfectly adequate formulation of the

27   idea of general intent.'" (quoting *United States v. Smith*, 638 F.2d 131, 133 (9th Cir.

28   _____

[6] § (a)(4) is assault by striking, beating, or wounding; § (a)(6) is assault resulting in serious bodily injury; and § (a)(7) is assault resulting in substantial bodily injury.

1981))). However, these statutory definitions encompassing the concept of general intent are inapposite to the attempted offense, which requires that the defendant had the specific intent, *i.e.*, a purpose or conscious desire, to do an act forbidden by law—attempting to strangle or suffocate the victim. *Jim*, 865 F.2d at 213; *Ramirez-Martinez*¸ 273 F.3d at 914. As with the completed offense, attempt under § 113(a)(8) does not require an intent to cause injury; rather, the mens rea requirement of specific intent for attempt is that the volitional act itself be willful or intentional. *Lewellyn*, 481 F.3d at 697.

This Court's finding is supported by the Ninth Circuit's decision in *United States v. Berckmann*, 971 F.3d 999 (9th Cir. 2020). There, the indictment charged that the defendant: (1) intentionally assaulted the victim with a dangerous weapon with intent to do bodily harm, and attempted to do so, under § 113(a)(3); and (2) intentionally assaulted the victim by strangling her, and attempted to do so, under § 113(a)(8). UNITED STATES OF AMERICA, Plaintiff, v. Matthew BERCKMANN, Defendant., 2017 WL 11507941 (D. Hawaiʻi). In denying the defendant's motion for a new trial based on a claim that the trial court improperly admitted evidence of his prior acts of domestic violence against the victim, the district court found that the evidence was admissible as relevant to a material element in issue because both counts required proof of specific intent. *United States v. Berckmann*, 2018 WL 5778396, at *8 (D. Haw. Nov. 2, 2018). The court specifically found that while the defendant was correct that actual assault by strangulation is a general intent crime, "Count 2 included an attempt to strangle [the victim], and attempt crimes are specific intent crimes." *Id.* (citing *Gracidas-Ulibarry*, 231 F.3d at 1192 ("[W]e have held that Congress' use of the term 'attempts' in a criminal statute manifested a requirement of specific intent to commit the crime attempted, even when the statute did not contain an explicit intent requirement.")). The Ninth Circuit agreed, holding that where a defendant is charged with assault by attempted strangulation, evidence of the defendant's prior acts of domestic violence against the victim is admissible under Fed. R. Evid. 404(b) as probative of the defendant's intent because "attempt crimes always require specific intent." *Berckmann*, 971 F.3d at 1003.

- 13 -

1    In sum, the Court finds that this factor weighs in favor of finding that § 113(a)(8)
2    creates two separate crimes, a completed offense that only requires general intent, and an
3    attempted offense that requires a showing of specific intent.

4         D.  Appropriateness of multiple punishment

5         Under this factor, the Court considers whether it would be appropriate to permit
6    the defendant to be punished multiple times for the conduct charged in the indictment.
7    There is a "presumption against construing penal statutes so as to lead to multiple
8    punishment[,] . . . [and t]he fact that a statute encompasses various modes of violation
9    requiring different elements of proof . . . does not compel a different result." *UCO Oil*,
10   546 F.2d at 837–38.

11        Here, it seems unlikely that Congress intended that a defendant would be exposed
12   to two or more sentences of up to 10 years each based on the same conduct. *See Brown v.*
13   *United States*, 623 F.2d 54, 59 (9th Cir. 1980) (absent clear Congressional intent to
14   "impose cumulative punishments upon [a defendant] . . . the rule of lenity [compels a
15   court] to hold that imposition of consecutive sentences . . . was error"). This seems
16   especially evident, as is the case here, in charging assault by strangling and attempting to
17   strangle in the same count.

18        In *Prince v. United States*, 352 U.S. 322 (1957), the Supreme Court held that
19   "under the bank robbery statute (18 U.S.C. Sec. 2113) which prohibits both bank robbery
20   and entry with intent to commit robbery and requires proof of different facts for each, that
21   only one punishment could be imposed for one entry." *UCO Oil*, 546 F.2d at 838 (citing
22   *Prince*, 352 U.S. 322). The Supreme Court "reasoned that Congress' purpose was to
23   permit conviction regardless of whether the robbery had been completed, not to pyramid
24   punishment." *Id.* The Court finds that this reasoning applies equally here: surely it was
25   not Congress's intent in enacting § 113(a)(8) that a defendant could be convicted and
26   punished for both assault by strangling and assault by attempting to strangle based on the
27   same conduct. The more logical conclusion is that "Congress' purpose was to permit
28   conviction regardless of whether the [strangulation] had been completed, not to pyramid

punishment." *Id.* Stated another way, it is more likely that Congress's focus was to protect Native women by allowing federal prosecutors to seek tougher sentences for assault by strangulation or suffocation—or attempt thereof—not to impose multiple punishments by charging both assault by strangling and assault by attempting to strangle in the same count.[7]

Accordingly, the Court finds that this factor weighs towards a finding of duplicity.

E.  Conclusion

Based on the foregoing analysis, the Court finds that *UCO Oil's* four factors weigh in favor of finding that Count Two of the indictment is duplicitous because it charges separate offenses of completed conduct and attempted conduct in one count under § 113(a)(8). Perhaps this is a badly worded statute, but it seems clear from this Court's analysis that the offense of assault by attempting to strangle requires the government to prove specific intent. As the Ninth Circuit has held that the offense of assault by strangling is a general intent crime, *Lamott*, 831 F.3d 1153, there can be no other logical conclusion but to find that the statute creates multiple offenses with different mens rea requirements. The Court therefore recommends that the District Judge give an unanimity instruction at trial requiring all jurors to agree as to whether the defendant is guilty of

---

[7] However, multiple sentences could be appropriate where the indictment charges multiple violations of the same statute based on different underlying conduct: For example, an indictment could charge multiple counts under § 113(a)(8) where each count is alleged to occur on a different date. Similarly, it might be appropriate to charge separate counts of assault by strangling/attempting to strangle and assault by suffocating/attempting to suffocate if the government alleged a different factual basis for each because the statutory definitions of "strangling" and "suffocating" contain different elements and thus each charge would be based on different conduct. *See United States v. Chilaca*, 909 F.3d 289, 291 (9th Cir. 2018) ("An indictment is not multiplicitous merely because it charges more than one violation of the same statute based on related conduct; instead, a defendant can be convicted of multiple violations of the same statute if the conduct underlying each violation involves a separate and distinct act." (citation omitted)); *compare United States v. D'Amico*, 496 F.3d 95 (1st Cir. 2007) (holding indictment charging Hobbs Act attempted and completed extortion in the same count was not duplicitous because attempt had no distinct elements from the completed crime and was a lesser included offense of extortion), *vacated on other grounds*, 552 U.S. 1173 (2008), *with United States v. Starks*, 515 F.2d 112 (3d Cir. 1975) (holding indictment charging Hobbs Act conspiracy to extort and attempt to extort in the same count was duplicitous), *and Iribe*, 564 F.3d at 1161 (holding it was constitutionally permissible to charge and convict defendant of conspiracy to kidnap and attempted kidnapping because each crime contained an element the other did not).

1    assault by strangling, or assault by attempting to strangle.[8]

2                                **RECOMMENDATION**

3           For the reasons stated above, the Court recommends that that District Court grant

4    the defendant's motion.

5           Pursuant to Federal Rule of Criminal Procedure 59(b)(2), any party may serve and

6    file written objections within 14 days of being served with a copy of this Report and

7    Recommendation. A party may respond to the other party's objections within fourteen

8    days. No reply brief shall be filed on objections unless leave is granted by the district

9    court. If any objections are filed, this action should be designated case number: **CR 21-**

10   **00955-TUC-JCH**. Failure to timely file objections to any factual or legal determination

11   of the Magistrate Judge may be considered a waiver of a party's right to de novo

12   consideration of the issues. *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th

13   Cir. 2003) (en banc).

14          Dated this 17th day of June, 2022.

15

16

17   _____

18   Eric J. Markovich
     United States Magistrate Judge

19

20

21

22

23

_____
[8] For an example, see the docket for *United States v. Sloan*, CR-15-08232-DLR, where
24   count six of the indictment charged that the defendant intentionally and knowingly
     assaulted the victim by strangling and attempting to strangle her. (Doc. 40 at 3). The
25   parties mutually proposed an unanimity instruction, which the Court then gave at trial,
     stating that in order for the defendant to be found guilty, the government had to prove
26   either (1) the elements of assault by strangling, or (2) the elements of attempted assault
     by strangling. (Doc. 76 at 5; Doc. 77 at 31; Doc. 102 at 22). While the undersigned had
27   no involvement in *Sloan*, it illustrates an example of a similar prosecution in this Court
     where it appears that the government declined to elect a theory of attempted versus
28   completed strangulation under § 113(a)(8) prior to trial, but agreed that an unanimity
     instruction was appropriate.