WO

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Jared Isiah Varela,<br><br>　　　　　Defendant. | No. CR-21-00955-001-TUC-JCH (EJM)<br><br>**ORDER** |

Before the Court is a Report and Recommendation ("R&R") from Magistrate Judge Eric J. Markovich, which recommends the Court deny two pretrial motions filed by Defendant Jared Isiah Varela. (Doc. 67.)  Defendant's Motion to Preclude and Response to Government's 404(b) Notice ("Motion I") seeks to preclude from evidence: (1) three prior domestic violence criminal cases from 2016 involving Defendant and the alleged victim ("A.A.") ("2016 Cases"); (2) an altercation at A.A.'s apartment that allegedly took place three to four days before the charged offense ("Apartment Incident"); and (3) a sexual encounter between Defendant and A.A. that allegedly occurred on the same day as the charged offense ("Sexual Encounter"). (*See* Doc. 41.) Defendant's Motion to Preclude Government's Expert Witnesses ("Motion II") seeks to preclude two government witnesses from testifying: (a) a "blind" domestic violence expert; and (b) a nurse who treated the alleged victim. (*See* Doc. 40.) Defendant timely objected to the R&R. (Doc. 76). The Court **overrules** Defendant's objection, **adopts** the R&R, **denies** both motions, and sets a hearing to determine the admissibility and scope of expert witness Kelly Wills' testimony.

**I.  Background**

On May 5, 2021, a federal grand jury returned a three-count indictment charging Defendant with felony domestic violence offenses involving alleged victim A.A. (Doc. 3.) Count One charges Defendant with intentionally, knowingly, and recklessly assaulting an intimate partner resulting in substantial bodily injury, under 18 U.S.C. §§ 1153 and 113(a)(7); Count Two charges Defendant with intentionally and knowingly assaulting an intimate partner by strangling and attempting to strangle her, under 18 U.S.C. §§ 1153 and 113(a)(8); and Count Three was dismissed without prejudice on the Government's motion. (Doc. 50.) The Government alleges the assault occurred on February 14, 2021, within the Pascua Yaqui Indian Reservation, and Defendant and A.A. were intimate dating partners. (Doc. 3.) A Jury Trial is set to begin October 24, 2022. (Doc. 87.)

**A. Factual Background**

The Court adopts the R&R's factual background and incorporates it by reference. (Doc. 67 at 3–5.) Defendant does not object to the facts regarding the 2016 Cases but offers his own factual background regarding the Apartment Incident and Sexual Encounter. (*See* Doc. 76 at 2–5.) The R&R accurately describes the facts, for purposes of this order, as follows:

i. Apartment Incident

As described by the government in its Notice, approximately 3–4 days before the charged assaults the defendant and victim had contact outside of her apartment. The victim asked the defendant if they could just be friends, and he said "no." The defendant told the victim that she did not love him or care about him and that she wanted to be with someone else. His accusations made her feel bad and like things were her fault. The defendant pinned the victim against the wall and was holding her arms and preventing her from leaving. He did not release her until she told him that she would stay with him. The victim told law enforcement that she does not actually want to be with the defendant and that he scares her, that she has been trying to leave the defendant but that he is manipulative, and that she feels like she has no choice in the relationship.

ii. Sexual Encounter

The government's Notice alleges that the following events transpired in the 24 hours prior to the charged conduct: The victim was at a party on the evening of February 13, 2021 and drank three Mike's Hard Lemonades and started to feel dizzy and tired and was afraid someone had drugged her. She called the first person in her phone to come pick her up—the defendant—and asked him to take her home. The victim passed out in the backseat and when she woke up, she realized the defendant had taken her to his mother's house. The defendant placed her on the bed and she fell asleep/passed out again. The victim woke up again with the defendant on top of her, having sex with her. After the sex was over, she got up, put her clothes on, and left. The defendant followed her out of the house and the charged assaults occurred. The victim later contacted law enforcement and stated she had lied about being asleep when the sex occurred. She said she was awake for some portions but was going in and out of consciousness. The defendant did not ask her if she wanted to have sex with him and she did not want to, but she felt like it was her fault because she did not say "no" or physically try to stop him. When asked why she did not try to stop him, the victim said that she was afraid something would happen if she told him "no" and that she just wanted him to finish so that she could leave. The victim stated that her sexual relationship with the defendant was forced and that he used their son against her to continue their relationship.

iii. Prior Cases

As described by the government in its Notice of Direct, Inextricably Intertwined, and Rule 404(b) Evidence, the defendant was previously charged in three domestic violence cases involving the same victim in Pima County Superior Court. The following summaries are derived from the government's Notice and the exhibits submitted at oral argument of the indictments and TPD case summary reports. In CR 20161989-001, TPD responded to the victim's apartment on March 28, 2016 after receiving a 911 call. The victim stated that she had broken up with the defendant in November 2014 and that he had been harassing her since January 2016. On March 27, 2016 she took the trash out and saw the defendant following her back to her apartment. He grabbed her by the hair and pulled her inside and threatened to harm her if she tried to leave. When she did attempt to leave, the defendant took her to the floor and held her down by her wrists and started screaming that they were going to be together or he would destroy any guy she was with. The defendant punched her in the face multiple times and strangled her until she lost consciousness for approximately 30 seconds. The defendant then sat on top of her for approximately 2 hours, telling her that he

- 3 -

wanted to get back together. When he got up to use drugs, the victim tried to leave again, and he again pulled her back inside by her hair. When the victim's parents showed up to take her to an appointment, they confronted the defendant and called the police. The victim had a black eye that was swollen shut and injuries to her collar bone, and the defendant took money and her cell phone. The defendant was indicted on eight charges and subsequently pled guilty to one count of attempted aggravated assault with a deadly weapon/dangerous instrument and one count of domestic violence aggravated assault. He was sentenced to one year imprisonment followed by four years' probation. In CR 20161990-001, the victim called TPD to report that the defendant showed up at her apartment on April 13, 2016. As she was leaving her apartment, the defendant came up behind her, grabbed her by the shoulders, and pushed her back inside. He started yelling at her and she went in the bedroom and tried to close the door to get away from him, and he hit and kicked the door. The defendant got into the bedroom and pushed the victim into the closet door. He held her in the apartment against her will for about an hour. The victim reported that the defendant showed up again on April 19, 2016 as she was leaving her apartment. He pushed the door open before she could lock it and threw her keys on the ground. The defendant took some of her DVDs, beanies, and a cell phone. She tried to serve him with an order of protection she had obtained, but he ignored her. The defendant was indicted on one count of domestic violence kidnapping and one count of second-degree burglary. The case was later dismissed as part of the plea agreement the defendant entered in CR 20161989-001 and CR 20161991-001. In CR 20161991-001, TPD responded to the victim's apartment on April 28, 2016 after receiving a 911 call. She was holding the right side of her face and had difficulty closing her mouth and thought something was wrong with her jaw. The victim reported that the night before, the defendant followed her to her apartment and argued with her and told her she would not get another boyfriend. The defendant took her cell phone and broke it. Eventually the victim was able to get him to leave. The next morning, she was leaving for work and the defendant was outside of her apartment waiting for her. He pushed her inside, yelled at her, and punched her in the face and chest, and she briefly passed out. She tried to run away but the defendant slammed the door shut on her arm. The victim struggled and was able to break free and asked a man outside to use his phone to call 911. The defendant fled, taking her apartment keys and paperwork related to her new job and their son. The defendant was indicted on three charges and pled guilty to one count of domestic violence kidnapping and was sentenced to 5 years imprisonment.

(Doc. 67 at 3–6.)

## II. Legal Standard

This Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1) (2005). Further, under 28 U.S.C. § 636(b)(1), if a party makes a timely objection to the magistrate judge's recommendation, then this Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made."

## III. Analysis

As to Motion I, the R&R determined that both the Apartment Incident and Sexual Encounter were inextricably intertwined with the charged offenses and thus, outside Fed. R. Evid. 404(b)'s requirements. (Doc. 67 at 10–12.) The R&R also determined that the 2016 Cases were admissible under Fed. R. Evid. 404(b) as relevant to the issues of motive, intent, and absence of mistake or accident. (*Id.* at 12–17.) Finally, under Fed. R. Evid. 403, the R&R weighed the probative value of the Apartment Incident, Sexual Encounter, and 2016 Cases and found the probative value of each was not substantially outweighed by the possible danger of unfair prejudice, confusing the issues, or misleading the jury. (*Id.* at 15–16.) Defendant objects to all three conclusions. (Doc. 76 at 9–16.)

**A. Motion to Preclude Government's 404(b) Evidence (Motion I)**

    **i.    Inextricably Intertwined Evidence**

In *United States v. Loftis*, the Ninth Circuit considered two exceptions where evidence may fall outside Rule 404(b)'s purview, relevant here, is the inextricably intertwined doctrine. 843 F.3d 1173, 1178 (9th Cir. 2016). Under this doctrine, evidence should not be considered "other crimes" or "other act" evidence, within the meaning of Rule 404(b), if the evidence concerning the "other act" and the evidence concerning the crime charged are inextricably intertwined. *Id.* at 1177 (internal citations and quotations omitted).

There are two categories where "other act" evidence is inextricably intertwined with the crime charged. *Id.* (citing *United States v. Vizcarra-Martinez*, 66 F.3d 1006, 1012 (9th Cir. 1995)). First, where the evidence "constitutes a part of the transaction that serves as

the basis for the criminal charge." *Id.* at 1177-78 (citing *Vizcarra-Martinez*, 66 F.3d at 1012). Second, where it is necessary to admit the evidence "to permit the prosecutor to offer a coherent and comprehensible story regarding the commission of the crime [to] explain either the circumstances under which particular evidence was obtained or the events surrounding the commission of the crime." *Id.* at 1178 (citing *Vizcarra-Martinez*, 66 F.3d at 1012-13). This includes evidence that establishes an ongoing relationship with other actors in the case or to rebut a defendant's claims that they were unaware of the criminal conduct at issue. *See United States v. Beckman*, 298 F.3d 788, 794 (9th Cir. 2002). It also includes evidence that shares an "important factual connection" with the charged crimes. *United States v. DeGeorge*, 380 F.3d 1203, 1220 (9th Cir. 2004). Here, the Government seeks to proceed under the coherent and comprehensive story prong. (Doc. 82 at 4.) The Court considers each event in turn.

### 1. Sexual Encounter

The Government argues the Sexual Encounter helps explain "what led up to and caused the defendant to attack A.A. on February 14, 2021." (Doc. 82 at 5.) The Court agrees evidence related to the Sexual Encounter is necessary to offer a coherent and comprehensible story. On February 14, 2021, A.A. left Defendant's mother's home and Defendant followed her to a bus stop. Defendant highlights that A.A. stayed at Defendant's mother's home until approximately noon on the incident date and agrees something happened to cause A.A. to leave towards the bus stop. (*See* Doc. 76 at 3.) The catalyst for A.A. to leave, according to Defendant, was an interaction between A.A. and Defendant's mother, whereas, according to the Government, A.A. left because of the Sexual Encounter. (*Compare* Doc. 76 at 3 *with* Doc. 82 at 5.) The Sexual Encounter is one explanation that may complete the logical sequence of events leading up to the assault and inform the jury why A.A. acted as she did, when she did. As such, the Sexual Encounter is inextricably linked to the charged conduct and testimony related to it will be permitted.

### 2. Apartment Incident

The Apartment Incident presents a closer question. Although the Apartment

Incident did not immediately precede the assault, it informs the relationship status between Defendant and A.A. in the days leading up to the alleged assault. *Beckman* is instructive. 298 F.3d at 791. In *Beckman*, defendant appealed his conviction for importation and possession after immigration agents discovered 1,541 pounds of marijuana in a trailer hitched to a truck he drove to the port of entry. *Id.* At trial the primary question was Beckman's knowledge and whether he knew of the marijuana in the trailer or whether he had been tricked into transporting the marijuana. *Id.* Under the inextricably intertwined doctrine, the Ninth Circuit considered testimony, involving Beckman's previous drug run, from the government's cooperating witness. *Id.* at 794. The Court found the testimony was necessary to provide a "coherent and comprehensible story" regarding the crimes for which Beckman was charged. *Id.* Specifically, the testimony (1) established Beckman's relationship with the government's cooperating witness; (2) showed the relationship was ongoing; (3) refuted Beckman's claim that he had no knowledge that marijuana was in the trailer; and (4) explained why Beckman was entrusted with marijuana valued at over $1,000,000. *Id.*

Here, the Apartment Incident similarly allows the Government to present a "coherent and comprehensible story." Specifically, it supports the Government's theory regarding the ongoing coercive relationship between Defendant and A.A. The proposed testimony may show that when A.A. attempted to end their relationship outside of her apartment, and mere days before the assault, she asked if they could remain friends and Defendant responded, "no" and then Defendant physically prevented her from leaving until she agreed to stay with him. The incident arguably underscores the power and control dynamic in Defendant and AA's relationship. Moreover, the incident may be relevant to rebut Defendant's potential claims that he was unaware, or caught off-guard, when A.A. wanted to end their relationship. It also runs counter to any potential self-defense claims regarding the charged assault and physical injury caused by A.A. (*See* Doc. 52 at 2 ("A.A. stated she pulled the defendant's hair, pinched his stomach, and twisted his genitalia, all in an attempt to get him to release her hand.")) The alleged assault on February 14, 2021, did

not occur in isolation; the parties share a complex relationship, and the charged incident is arguably a continuation of events beginning three to four days earlier at A.A.'s apartment. As such, the Court finds the Apartment Incident to be inextricably intertwined evidence. And, as explained below, the Court finds the Sexual Encounter and Apartment Incident are also admissible under Rule 404(b) to prove motive, intent, absence of mistake or accident.[1]

### ii. FRE 404(b) Evidence

Fed. R. Evid. 404(b) precludes the use of other acts or crimes to prove a witness's character or to prove that on a particular occasion the witness acted in conformity with that character. *United States v. Bradley*, 5 F.3d 1317, 1319 (9th Cir. 1993). Other acts evidence may be admitted under Rule 404(b) for a purpose other than proving character, such as motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, and lack of accident regarding the charged conduct. *See id.*

Other acts evidence in domestic violence cases involving the same victim are particularly relevant, as the Ninth Circuit has explained:

> Other acts of domestic violence involving the same victim are textbook examples of evidence admissible under Rule 404(b), and courts have permitted this evidence under a variety of theories. Some have explained that additional assaults are admissible as a "critical part of the story" that clarifies the motive behind the charged crimes. Other courts have allowed this evidence to illustrate the "history of [the] relationship" between the defendant and victim, which speaks to a defendant's intent. These cases say essentially the same thing—prior (and subsequent) acts of violence towards the identical victim can shed light on the mindset of the defendant during the charged crime, such as whether there was a grudge between the two, a desire for payback of some sort, or that the defendant had the intent to exert control over this particular victim through violence.

*United States v. Berckmann*, 971 F.3d 999, 1002 (9th Cir. 2020), *cert. denied*, 209 L. Ed. 2d 766, 141 S. Ct. 2649 (2021).

---

[1] The R&R found both the Apartment Incident and Sexual Encounter to be inextricably intertwined with the charged offenses and therefore did not consider Rule 404(b)'s requirements. (Doc. 67 at 10–12.) The Court departs from the R&R on this point and finds the Apartment Incident and Sexual Encounter are inextricably intertwined with the charged offense, and in the alternative, admissible under Rule 404(b)'s requirements.

- 8 -

The Government contends that the Sexual Encounter, Apartment Incident, and 2016 Cases all show motive, even though motive is not an element of the charged offenses. (Doc. 82 at 17.) The Government contends both the Sexual Encounter and Apartment Incident demonstrate Defendant's possible motive for attacking A.A. after she left the house. (Doc. 82 at 7.) The Court agrees. Motive and intent are relevant to the present case and therefore a proper purpose.

With respect to the Sexual Encounter, the Government's evidence is that A.A. was upset after the Sexual Encounter and, consequently, she got dressed and left the house to go home. A jury could reasonably infer from this that Defendant might have felt rejected by A.A.'s behavior and responded with violence. Similarly, the Apartment Incident, 2016 Cases and charged offense arguably follow a common pattern: A.A. rejects or defies Defendant and Defendant responds with violence against A.A. to coerce her. Also, the 2016 Cases and Apartment Incident may be properly admitted to rebut any defenses sounding in self-defense or mistake that Defendant may attempt to offer.

Turning to the four-part test governing the admission of Rule 404(b) evidence,[2] the Court first concludes that the disputed evidence tends to prove a material point, specifically motive, intent, absence of mistake, and lack of accident.

Second, the Court does not find that the other acts evidence is too remote in time to be admitted under Rule 404(b). Remoteness is flexible and relative in the Rule 404(b) context. *See United States v. Vo*, 413 F.3d 1010, 1018–19 (9th Cir. 2005); *see also United States v. Johnson*, 132 F.3d 1279, 1283 (9th Cir. 1997) (holding that thirteen years since a prior bad act was not too remote in time). The Apartment Incident (three to four days prior) and Sexual Encounter (immediately prior) are plainly not too remote in time to the charged offense. The question is closer with the 2016 Cases coming some five years before the charged offense. But the Court is persuaded the 2016 Cases are not too remote because the temporal gap was filled mostly by Defendant's five-year prison term arising out of the 2016

---

[2] Under that test, other acts evidence is admissible if: (1) the evidence tends to prove a material point; (2) the other act is not too remote in time; (3) the evidence is sufficient to support a finding that defendant committed the other act; and (4) the act is similar to the offense charged. *United States v. Cox*, 963 F.3d 915, 924 (9th Cir. 2020).

- 9 -

Cases. After Defendant finished his prison term, a relationship with A.A. started up again, and within a few months the charged offense occurred. (Doc. 82 at 10.)

Third, because the "other acts" evidence will be established by A.A.'s expected testimony, sufficient evidence exists from which the jury could find by a preponderance of the evidence the "other acts" occurred, *See United States v. Dhingra*, 371 F.3d 557, 566 (9th Cir. 2004), as amended on denial of reh'g (July 23, 2004), (finding the testimony of a single witness satisfies the criteria for admissibility under Rule 404(b)). Also, Defendant entered guilty pleas in CR-20161989 and CR-20161991.

Fourth, as discussed above, the Court finds the "other acts" evidence and the charged offense are sufficiently similar to satisfy the Rule 404(b) inquiry. All of them arguably follow a dysfunctional pattern all too common in domestic violence cases. The victim rejects or defies the abuser, and the abuser reacts with violence to coerce or punish the victim.

### iii.     Rule 403

Even where evidence of other acts is admissible for a proper purpose under Rule 404(b), the court may nevertheless exclude evidence of other crimes or acts if its probative value is substantially outweighed by the danger of unfair prejudice under Fed. R. of Evid. 403. *United States v. Romero*, 282 F.3d 683, 688 (9th Cir. 2002).  Rule 403 "requires that the probative value of the evidence be compared to the articulated reasons for exclusion and permits exclusion only if one or more of those reasons 'substantially outweigh' the probative value." *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000).

Here, the probative value is not substantially outweighed by the danger of unfair prejudice. As to the Sexual Encounter, the Government does not intend to argue a sexual assault occurred (and will not be allowed to do so) and avows that it will not emphasize the Sexual Encounter during its case in-chief. (*See* Doc. 82 at 3, 5.)  Defendant nonetheless requests the Sexual Encounter be precluded under Rule 403. Uncharged acts involving sexual assault are certainly prejudicial, particularly if such testimony recounts unnecessary, inflammatory, or lewd details. To prevent misuse, the Court will direct the parties to jointly

propose a limiting instruction. *See United States v. Thornhill*, 940 F.3d 1114, 1123 (9th Cir. 2019) (highlighting the importance of limiting instructions and explaining that "even where evidence is *highly* prejudicial, it is not necessarily *unfairly* prejudicial" (citation omitted)). Moreover, the Court may give the Government leeway to ask leading questions when addressing the Sexual Encounter to expedite and limit the testimony on the subject.

The 2016 Cases and Apartment Incident parallel the charged conduct and involve the same victim. For example, CR 20161989-001 also involved allegations the Defendant punched and strangled the victim. Moreover, the circumstances surrounding the 2016 Cases and Apartment Incident may provide the jury with important context involving the relationship status and dynamics between Defendant and A.A. Any concern that the 2016 Cases and Apartment Incident may unfairly prejudice Defendant is substantially outweighed by the probative value of the evidence. Not only is the evidence probative of various issues in this case, but the Court's use of a limiting instruction will help limit the prejudice.

The Court will direct the parties to jointly propose a limiting instruction for the evidence and its proper purposes, under both the inextricably intertwined doctrine and other acts evidence Rule 404(b), the jury may consider.

**B. Motion to Preclude Government's Expert Witness (Motion II)**

The R&R considered *inter alia* the Government's proposed "blind" domestic violence expert Kelly Wills.[3] ("Ms. Wills"). (Doc. 67 at 18.) The R&R found Ms. Wills is a "proper subject of expert testimony, and that the admissibility of this testimony pursuant to *Daubert* and Rule 702 is best addressed by the District Judge." (Doc. 67 at 26.) Defendant argues that Government failed to meet the reasoning and methodology requirement under Fed. R. Evid. 702 and that this Court should preclude the blind expert witness testimony as prejudicial and irrelevant. (Doc. 76 at 16.)

An expert may testify if, among other requirements, "the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the

---

[3] Defendant did not object to the R&R's findings and conclusions regarding Government's witness Janice Lange, as such, this section of the R&R is adopted in its entirety.

- 11 -

evidence or to determine a fact in issue." Fed. R. Evid. 702(a); *see also Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993). The Court must ensure that specialized evidence is relevant and reliable. *Id.* at 589. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and whether that reasoning or methodology properly can be applied to the facts in issue. *Id.* at 592–93. *Desrosiers v. Flight Int'l of Fla. Inc.*, 156 F.3d 952, 961 (9th Cir. 1998).

In determining whether the proposed testimony is the product of reliable methods, the Court may consider: (i) whether the method has been tested; (ii) whether the method has been published and subject to peer review; (iii) the error rate; (iv) the existence of standards and whether the witness applied them in the present case; and (v) whether the witness' method is generally accepted as reliable in the relevant medical and scientific community. *Daubert*, 509 U.S. at 594–95. In cases involving technical analysis, rather than scientific evidence, the reliability inquiry should be "flexible," since oftentimes *Daubert's* four factors may not apply. *See Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 158 (1999). For example, "when evaluating specialized or technical expert opinion testimony, the relevant reliability concerns may focus on personal knowledge or experience." *United States v. Sandoval-Mendoza*, 472 F.3d 645, 655 (9th Cir. 2006) (internal citation and quotations omitted). Expert opinions are reliable when they have a "reliable basis in the knowledge and experience of the relevant discipline." *Id.* at 645.

The Court will set a hearing on the matter. The parties shall confer prior to the hearing to determine exactly what expert opinions Ms. Wills intends to offer at trial, how Ms. Wills' particular experience offers a reliable basis to support a specific opinion, and why Defendant believes Ms. Wills' particular experience does not establish a reliable basis for her specific opinions. At the hearing, the Court will allow Defendant to *voir dire* Ms. Wills and the Court will make its findings on the record.

///

### IV. ORDER

Accordingly,

**IT IS HEREBY ORDERED ADOPTING WITH MODIFICATIONS** the Report and Recommendation, (Doc. 67), and **OVERRULING** Defendant's objection (Doc. 76).

**IT IS FURTHER ORDERED GRANTING** Defendant's Motion to Exceed Page Limit with respect to his Objection filed at docket 82. (Doc. 75.)

**IT IS FUTHER ORDERED DENYING** Defendant's Motion to Preclude and Response to Government's 404(b) Notice. (Doc. 41.) The parties shall meet and confer and jointly file a proposed limiting instruction as to the evidence and its use under the inextricably intertwined doctrine and 404(b). The proposed limiting instruction is due on or before the Final Pretrial Conference set for October 17, 2022.

**IT IS FUTHER ORDERED DENYING** Defendant's Motion to Preclude Government's Expert Witness, (Doc. 40), as to Government's witness Janice Lange. **IT IS ORDERED DEFERING RULING** on Defendant's Motion to Preclude Government's Expert Witness, (Doc. 40), as to Government's witness Kelly Wills. The Court will set a hearing to determine the reliability and admissibility regarding Ms. Wills proposed testimony and the scope of that testimony. The hearing is set for on the first day of trial following jury selection. The parties shall meet and confer and jointly file a Notice with the above-requested information due on or before the Final Pretrial Conference set for October 17, 2022.

Dated this 27th day of September, 2022.

Honorable John C. Hinderaker
United States District Judge